843 F.2d 666
 RICO Bus.Disp.Guide 6910, 9 Employee Benefits Ca 2623
 Arsenio C. SAPORITO, Pasquale F. Ambrosio, Alfred Grant
Baum, Frederick Betz, Rose Bochicchio, William Floyd
Burroughs, Amerigo Burruano, Edwin B. Carlson, William F.
Cheperak, George F. Crowley, Vernon D. Davis, John Francis
DeMar, Fred Diamond, Norma Lee Dyer, Murray S. Gottlieb,
Svante Humbla, Edward F. Jedziniak, Alda Yvonne Kyle,
Charles Philip Marion, Louis Marshall, Richard Martone,
Peter James Mikedes, Anthony J. Morrell, Per Olof Einer
Reich, Robert Robie, Harold Rodriguez, Tim Shaunfield, Mary
S. Siegel, Richard Iver Swartz, Morris Swerlin, Huan Yin
Wang, Jess V. Ziccarello, Appellants,
v.
COMBUSTION ENGINEERING INC., Charles E. Hugel, Donald C.
Taylor, Sveh A. Kreipke and C.L. Bekkedahl, Appellees.
 No. 87-5144.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 5, 1987.
Decided March 29, 1988.
Rehearing and Rehearing In Banc Denied April 29, 1988.
 
 Judith P. Vladeck (argued), Vladeck, Waldman, Elias & Engelhard, P.C., New York City, Margaret L. Moses, Newark, N.J., for appellants.
 Richard C. Mariani (argued), Apruzzese, McDermott, Mastro & Murphy, Springfield, N.J., for appellees.
 Before BECKER, SCIRICA and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This is an appeal from the district court's dismissal of the complaint of thirty-two former employees of Combustion Engineering, Inc. ("C-E") which alleged that C-E and four of its officers (collectively "appellees"), induced appellants to retire under one retirement plan while at the same time concealing from them but disclosing to certain other employees the development of a second, more generous plan. The complaint claimed that appellees thereby breached fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001-1461 (1982), and violated the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("civil RICO"), 18 U.S.C. Secs. 1961-1968 (1982).[1]
 
 
 2
 The appeal presents two ERISA questions. The first question is whether appellants, having received all the benefits to which they were entitled under the first plan, were no longer "participants" in the plan as required for standing to sue for breach of fiduciary duty under ERISA Sec. 502(a), 29 U.S.C. 1132(a) (1982). We conclude that they were not and will therefore affirm the district court's dismissal of Count I. The second question is whether appellants, having retired under the first plan (not knowing about the second) nonetheless have standing to sue as potential participants in the second plan, and, whether appellees' actions constitute discrimination against appellants in violation of ERISA Sec. 510, 29 U.S.C. Sec. 1140, for the purpose of denying benefits to which they were or would have become entitled. We conclude that appellants have standing because their allegations, if proved, would demonstrate that appellants would have been participants in the second plan but for C-E's actions, which effectively tricked them into retirement under the first plan while secretly informing other employees of the second, more lucrative, plan. Because appellants should have an opportunity to flesh out their Sec. 510 claim, we will remand the case to the district court for further proceedings on that claim.
 
 
 3
 The appeal also presents several RICO questions. The first question is whether appellants have alleged fraud with particularity as required under Fed.R.Civ.P. 9(b), which is made applicable by the RICO jurisprudence. We conclude that the complaint failed to allege fraud with sufficient particularity, but that appellants should be allowed to amend the complaint. The second question is whether appellants have alleged a "pattern" of racketeering activity. Applying this court's recent decisions in Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36 (3d Cir.1987), and Marshall-Silver Construction Co. v. Mendel, 835 F.2d 63 (3d Cir.1987), we determine that appellants' allegations of multiple inducements to retire made to at least thirty-two individuals over an extended period of time met the pattern requirement. The third question is whether C-E can be both an enterprise and a person liable under civil RICO. Appellants pleaded that C-E was an "enterprise" under Sec. 1962. Under Sec. 1962(c) only "persons" may be held liable, and a corporation may not be both a person and an enterprise under Sec. 1962(c). The language of Sec. 1962(a) differs, however, and a corporation may be both an enterprise and a person under that subsection. Because of a lack of specificity in the complaint, we are unable to determine whether it alleged a violation of 18 U.S.C. Sec. 1962(c) or of Sec. 1962(a), and thus we are unable to determine whether the complaint against C-E must be dismissed. For all these reasons we will reverse and remand the district court's dismissal of Count III (the civil RICO count).
 
 I. FACTS AND PROCEDURAL HISTORY
 
 4
 Arsenio C. Saporito and the thirty-one other plaintiff-appellants are all former employees of C-E who receive monthly pension benefits under C-E's corporate-wide salaried pension plan, entitled the C-E Retirement Plan for Salaried Employees ("the Corporate Plan"), and who in February 1985, took early retirement pursuant to C-E's Voluntary Early Separation Plan ("VESP"). Because the complaint was dismissed on the pleadings, we will treat the allegations in the complaint as true. See Labov v. Lalley, 809 F.2d 220, 221-22 (3d Cir.1987); Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985).
 
 
 5
 C-E first notified its employees of VESP on or about February 4, 1985. Employees had until February 15, 1985 to join the plan, which entailed retiring by February 28, 1985. The VESP plan was offered to employees of the C-E Engineering and Construction Group working in New Jersey, Oklahoma, and Texas. Under VESP, the employees received, in addition to pension and other benefits to which they were already entitled under the Corporate Plan, a special lump-sum separation payment.[2] According to appellants, they accepted the terms of VESP because C-E and its officers threatened or implied that appellants would be laid off if they did not accept the plan. The parties agree that C-E did subsequently lay off some employees. All of the appellants accepted VESP, retired effective February 28, 1985, and received the benefit payments to which they were entitled under the plan.
 
 
 6
 Appellants allege that at the same time C-E was encouraging appellants to join the VESP, C-E was actively planning to promulgate another early retirement plan, the Voluntary Separation Incentive Plan ("VSIP"), to be offered to certain employees after the expiration of the VESP election period. C-E unveiled VSIP and offered it to C-E employees on May 20, 1985. VSIP provided for significantly greater benefits than the earlier VESP, including unreduced early retirement benefits, surviving spouse benefits, supplemental pension benefits, and free medical and dental benefits.[3]
 
 
 7
 Appellants also allege that during the election period for VESP, C-E "and/or persons acting under [its] direction or control" informed certain employees other than the appellants that the more valuable VSIP would be offered shortly after the expiration of VESP. J.A. at 45. According to appellants, they were not informed about VSIP, but would have been eligible and eager to participate had they been given the opportunity. After learning of VSIP, appellants requested to participate in the plan, but C-E denied these requests.
 
 
 8
 Appellants subsequently filed a three count complaint, asserting two ERISA claims and one civil RICO claim. Count I alleged that appellants were participants in the VESP plan; that C-E and the individual defendants are administrators and fiduciaries of VESP under ERISA; and that C-E and the individual defendants breached their fiduciary duty to appellants by: (1) withholding information about the development of the VSIP plan, which "was material and necessary to [appellants] in determining whether or not to participate in VESP"; and (2) divulging such information to other C-E employees. J.A. at 49.
 
 
 9
 In Count II appellants alleged that they were participants in VSIP because "but for" C-E's misrepresentations, appellants would have refused the VESP offer and would have elected to join VSIP. Although Count II did not specify which ERISA section was thereby violated, appellants argued before the district court and argue here that C-E's actions violated ERISA Sec. 510, 29 U.S.C. 1140, which prevents employers from interfering with rights to which employees may become entitled under ERISA. In effect, appellants alleged that C-E's actions interfered with their opportunity to participate in the VSIP plan. Appellants claimed damages for Counts I and II equal to the difference in the value between the benefits of the two plans, plus punitive damages, interest, attorneys' fees, and costs.
 
 
 10
 Finally, Count III alleged that the individual defendants used the mails and telephone to prevent the appellants from participating in VSIP, which constituted acts of mail and wire fraud amounting to a pattern of racketeering activity under 18 U.S.C. Sec. 1961(5). Count III further alleged that such racketeering activity on the part of the individual defendants violated 18 U.S.C. Sec. 1962, which prohibits conducting or participating in the affairs of an enterprise (C-E) through racketeering activity. Appellants also alleged that the enterprise itself violated Sec. 1962 by engaging in a pattern of racketeering activity. Appellants sought treble damages, costs and attorneys fees from the individual appellees and C-E itself in the civil RICO count.
 
 
 11
 C-E and the individual defendants moved to dismiss all counts pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion as to the civil RICO count (Count III), but at first rejected C-E's motion to dismiss the ERISA counts, presumably because appellants' allegation that C-E had informed certain other employees (but not appellants) of the forthcoming VSIP plan, if supported, would enable appellants to have standing under ERISA as participants of VSIP.[4] On motion for reconsideration, however, the district court dismissed the ERISA counts (I and II).[5] This appeal followed.
 
 II. THE ERISA COUNTS
 A. Breach of Fiduciary Duty (Count I )
 
 12
 Because the district court dismissed the case on the pleadings, see supra n. 1, we must "determine whether in the light most favorable to [the appellants] 'it appears beyond doubt that the [appellants] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " Paolino v. Channel Home Centers, 668 F.2d 721, 722 (3d Cir.1981) (quoting Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Our review of an order dismissing a complaint involves a question of law and is therefore plenary. D.P. Enters v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984).
 
 
 13
 In Count I, appellants alleged that they were participants in the VESP plan, and that C-E and the individual defendants breached their fiduciary duties by disclosing the development of VSIP to select employees while at the same time coercing appellants into retirement to prevent them from receiving the greater benefits of VSIP. The district court dismissed the count on the ground that appellants had elected to take retirement under VESP, and that C-E had no fiduciary duty to disclose information about VSIP because it "was only in the planning stages at the time of [appellants'] retirement." J.A. at 6. However, the district court did not address the question whether C-E breached a fiduciary duty by revealing the development of the VSIP to certain employees but not appellants. On appeal, appellants raise two questions pertaining to the dismissal of Count I, only one of which requires discussion, namely, were appellants "participants" in VESP for the purposes of standing?
 
 
 14
 Under ERISA Sec. 502(a)(2), 29 U.S.C. Sec. 1132(a)(2), a civil action for the breach of a fiduciary duty may be brought by the Secretary of Labor or a plan "participant, beneficiary or fiduciary." Similarly, ERISA Sec. 502(a)(1), 29 U.S.C. Sec. 1132(a)(1), restricts civil actions against a plan administrator to actions brought by a "participant or beneficiary." The requirement that the plaintiff be a plan participant is both a standing and subject matter jurisdictional requirement. Molnar v. Wibbelt, 789 F.2d 244, 247 (3d Cir.1986); Stanton v. Gulf Oil Corp., 792 F.2d 432, 434 (4th Cir.1986).
 
 
 15
 ERISA Sec. 3(7) defines "participant" to include:
 
 
 16
 any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
 
 
 17
 29 U.S.C. Sec. 1002(7). C-E contends that appellants do not qualify as participants in the VESP because they have received all of the benefits to which they are entitled under the VESP plan in a lump sum. We agree.
 
 
 18
 As a general rule, employees who take early retirement and elect to receive lump sum retirement benefits do not have standing to seek the increased payment later made to retirees or to challenge changes in the retirement plan. See Kuntz v. Reese, 785 F.2d 1410 (9th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); Yancy v. American Petrofina, Inc., 768 F.2d 707 (5th Cir.1985); Joseph v. New Orleans Elec. Pension & Retirement Plan, 754 F.2d 628 (5th Cir.), cert. denied, 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985). Appellants respond that because they all are receiving on-going pension benefits under the Corporate Plan in addition to the lump sum payments received under VESP, they are participants in VESP. However, in order to have standing here, appellants must allege that they are participants in VESP, not in the underlying corporate pension plan. VESP consisted entirely of a lump sum payment to employees, based on the number of years of employment. See supra p. 668 with note 2. The Corporate Plan was a separate pension plan that existed before VESP was offered and that has continued after VESP expired. Thus, although the appellants are participants in the Corporate Plan, they no longer are participants in the VESP. We will therefore affirm the order of the district court dismissing appellants' Count I.
 
 
 19
 We turn next to the heart of appellants' complaint, that such actions amounted to an attempt to interfere with appellants' rights to future benefits in VSIP in violation of ERISA Sec. 510, 29 U.S.C. Sec. 1140.
 
 B. ERISA Sec. 510 (Count II)
 
 20
 Appellants contend that C-E discriminated against them in violation of ERISA Sec. 510, 29 U.S.C. Sec. 1140, by telling other employees of the second plan, while at the same time inducing appellants to retire under the first plan. Appellants assert that they would have been participants in VSIP "but for" C-E's fraudulent activity, and thus that they have standing as VSIP participants. The district court dismissed Count II because the court determined that appellants "did in fact elect early retirement so as to become beneficiaries of the VESP plan" and, because they were not participants in VSIP, they had no standing to claim that C-E interfered with their rights under VSIP.
 
 
 21
 ERISA Sec. 510 prohibits employers from penalizing employees with the purpose of interfering with certain benefits to which they are or may become entitled. Section 510 provides in pertinent part:
 
 
 22
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....
 
 
 23
 29 U.S.C. Sec. 1140 (emphasis added).
 
 
 24
 C-E contends that the appellants are not participants in or beneficiaries of VSIP "since they voluntarily retired prior to the time VSIP existed and nothing they allege can change the fact that they were not eligible to participate in VSIP at the time it was offered."[6] Appellee's Br. at 24. C-E's contention, however, begs the question: appellants allege not just that C-E failed to inform them of the VSIP, but that C-E coerced the appellants into retiring while providing information to some other employees and thus, in essence, tricked the appellants into retiring early. If they had not been tricked, the argument continues, they would have been participants in the VSIP plan. Therefore, the issue is not whether appellants should be denied standing because they retired "voluntarily," but rather, whether appellants have standing for the purposes of demonstrating that they were tricked into retiring, and thus would have been eligible for participation in VSIP. Appellants contend that but for the selective divulgence of information, they would have been members of VSIP, and, for the purposes of standing to bring an action under ERISA, should be considered as such. We agree with this contention.
 
 
 25
 This is not an instance where plaintiffs simply alleged that the employer did not inform the employees of a plan in development. Instead, appellants here argue that C-E induced appellants to retire under the VESP, while secretly informing some individuals of the more lucrative VSIP.[7] By its very nature, a Sec. 510 claim will often involve employees who claim that they did not receive benefits because of the employer's actions, and thus were denied an opportunity to become "participants" in the benefits. To require that the employees have the status of participant where they allege that the employers' acts effectively deprived them of such status would undercut the provision and cannot have been intended by Congress.
 
 
 26
 We therefore conclude that appellants have standing to demonstrate that they would have been participants absent C-E's actions.[8] Because of the procedural posture of the case, the appellants have not fleshed out the elements of their Sec. 510 claim, and it is not for us to do so here.[9] We note, however, that we have not determined that appellants will be able to establish a violation of Sec. 510, only that they have standing to pursue it.[10] We will therefore reverse the judgment and remand for further proceedings regarding Count II consistent with this opinion.
 
 III. CIVIL RICO
 A. Introduction
 
 27
 To survive a Rule 12(b)(6) motion, a civil RICO claim must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." Marshall-Silver Constr. Co. v. Mendel, 835 F.2d 63, 65 (3d Cir.1987) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). Count III of appellants' complaint alleges that by intimidating appellants with threats of an immediate layoff and by pressuring them into accepting VESP benefits while revealing the development of a second, more generous plan to other employees, C-E engaged in a pattern of racketeering activity in violation of civil RICO, 18 U.S.C. Sec. 1962. C-E challenged the civil RICO count by maintaining that appellants failed to meet the RICO pattern requirement, 18 U.S.C. Sec. 1962.
 
 
 28
 The district court granted C-E's motion to dismiss the RICO claim, impliedly holding that more than one "scheme" is required to comprise a pattern of racketeering activity: the court concluded that "if anything[, appellants] have alleged multiple acts in furtherance of a single scheme." J.A. at 26. On appeal, appellants contend that the district court erred in requiring more than one scheme. C-E makes three arguments in response: (1) that appellants failed to allege fraud with specificity as required under Fed.R.Civ.P. 9(b); (2) that the district court properly dismissed Count III because appellants failed to allege a sufficient civil RICO pattern; and (3) that the complaint was properly dismissed as to C-E, because the company cannot be both an enterprise and a person liable under civil RICO. We consider these contentions in turn.
 
 B. The Sec. 9(b) Pleading Requirement
 
 29
 Appellants allege that defendants used the mails and telephone in their scheme to defraud them and in doing so committed mail and wire fraud under 18 U.S.C. Secs. 1341 and 1343. Appellants allege that each such use of the mails or telephone constituted a predicate act of racketeering activity as defined in civil RICO Sec. 1961(1), 18 U.S.C. Sec. 1961(1).[11] Because these predicate acts are acts of fraud, they must be pleaded with particularity under Fed.R.Civ.P. 9(b). Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786 (3d Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).
 
 
 30
 At bottom, appellants' allegation of fraud is as follows: "Upon information and belief, defendants and/or persons acting under their direction or control provided notice to certain C-E employees other than plaintiffs, during the VESP option period, that C-E was in the process of planning and promulgating VSIP." J.A. at 45.[12] C-E argues that the district court's dismissal of the civil RICO count should be affirmed because appellants' averment of fraud failed to meet the Fed.R.Civ.P. 9(b) pleading requirements. Specifically, C-E maintains that appellants' allegation of fraud is deficient because it does not give sufficient indication of what acts constituted fraud, such as which defendants were involved, what was said, or the time and place of the statements.
 
 
 31
 Fed.R.Civ.P. 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The circuits have differed in their treatment of Rule 9(b) and civil RICO predicate acts.[13] This court addressed the issue in Seville. 742 F.2d 786 (3d Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).
 
 
 32
 The district court in Seville had dismissed the complaint on the ground that it failed, inter alia, to meet the Fed.R.Civ.P. 9(b) pleading requirements. The plaintiff, an industrial machinery trader, alleged that the defendants induced it to enter into several contracts for the purpose of selling and re-selling industrial machinery, and that because of the defendants' fraudulent misrepresentations it shipped seven hundred pieces of machinery to the defendants without receiving payment. The district court found that the allegations of fraud were deficient because they "did not describe the date, place or time of the phone calls and letters that defendants allegedly used in furtherance of their fraudulent scheme." Seville, 742 F.2d at 791. The district court also held that because the complaint failed to allege when the transportation of goods occurred, the plaintiff failed properly to plead the interstate component of the claim.
 
 
 33
 We reversed, noting that "in applying Rule 9(b), 'focusing exclusively on its "particularity language" is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.' " Seville, 742 F.2d at 791 (quoting Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298, at 407 (1969))). We also pointed out that the plaintiff had specified the machinery in great detail, and, more importantly for the case sub judice, that "[t]he complaint set[ ] forth the nature of the alleged misrepresentations, and while it d[id] not describe the precise words used, each allegation of fraud adequately describe[d] the nature and subject of the alleged misrepresentation." Seville, 742 F.2d at 791. As an example of the adequate description, we quoted a paragraph from the complaint:
 
 
 34
 [Defendants] [r]epresented to [plaintiff] that if the industrial machinery listed in Exhibits A and C were shipped on consignment to either [of the defendants], that the industrial machinery would be resold, and that the purchase price paid by [plaintiff] for this equipment along with a 50% pro rata share of the profits resulting from resale would be distributed and paid back to [plaintiff].
 
 
 35
 Id. at 791 n. 6.
 
 
 36
 Neither party in the case sub judice cited Seville. Appellants maintain that because the 18 U.S.C. Sec. 1341 and Sec. 1343 "scheme to defraud" element of civil RICO fraud "is not defined according to any technical standards.... [and] need not be fraudulent on its face," we should find the allegation of fraud sufficient. United States v. Pearlstein, 576 F.2d 531, 535 (3d Cir.1978). Appellants misconstrue the meaning of the pleading requirement, however. The pleading requirement simply mandates that the actions establishing the fraud be pleaded with greater particularity than other pleadings; it has no impact on the definition of fraud itself. Thus, Rule 9(b) does not alter the substantive offense of fraud, but requires detailed allegations of that offense.
 
 
 37
 That detail is lacking here. The complaint in Seville indicated who made the representations to whom, and the general content of the representations. Although the appellants' complaint does indicate the general content of the representations ("notice that C-E was in the process of planning and promulgating VSIP" ),[14] it does not indicate who the speakers were ("defendants and/or persons acting under their direction and control " ) or who received the information ("certain C-E employees other than plaintiffs").[15] J.A. at 56-58 (emphasis added).
 
 
 38
 Although we, too, are mindful of the admonition in Christidis, relied upon in Seville, not to read the particularity requirement too narrowly, the pleadings before us do not provide even the level of notice that we pointed out in Christidis is the underpinning of the particularity requirement. See Christidis, 717 F.2d at 100. Moreover, there is no reason to believe that additional information is in the exclusive control of C-E. See New England Data Serv., Inc. v. Becker, 829 F.2d 286, 289 (1st Cir.1987). Hence, we hold that the appellants' allegations are insufficient to meet the particularity requirement of Rule 9(b).
 
 
 39
 Because appellants should have an opportunity to amend the complaint to provide greater specificity, see Fed.R.Civ.P. 15; District Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir.1986), we will remand with instructions to the district court to grant leave to amend. See New England Data Serv., Inc., 829 F.2d at 290 (Rule 9(b) requires specific allegations of fraud in civil RICO cases, but "the court should make a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint" ) (emphasis in original); Ray v. Karris, 780 F.2d 636, 645 (7th Cir.1985) (allowing amendment of pleadings following failure to make sufficient civil RICO allegations).
 
 B. The RICO "Pattern" Requirement
 
 40
 Because appellants may be able to amend Count III to allege fraud with the requisite particularity, we will consider whether appellants have sufficiently pleaded a "pattern" of racketeering activity. RICO Sec. 1961(5) states that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. Sec. 1961(5). These predicate racketeering acts may include, among others, any acts that are indictable under the federal mail fraud (18 U.S.C. Sec. 1341) and wire fraud (18 U.S.C. Sec. 1343) statutes. 18 U.S.C. Sec. 1961(1) (Supp. III 1985).
 
 
 41
 In its now famous and somewhat opaque Sedima footnote, the Supreme Court stated:
 
 
 42
 The legislative history supports the view that two isolated acts of racketeering do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91-617, p. 158 (1969) (emphasis added).
 
 
 43
 Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 n. 14 (1985). The courts have since divided as to the footnote's meaning.
 
 
 44
 Some courts have interpreted the Supreme Court's language as an invitation to restrict the reach of civil RICO by requiring that to comprise a pattern the predicate acts must include multiple schemes, or continuity demonstrated by ongoing or open-ended activity. See, e.g., Superior Oil Co. v. Fulmer, 785 F.2d 252, 257 (8th Cir.1986) (requiring multiple fraudulent schemes); Northern Trust Bank/O'Hare v. Inryco, Inc., 615 F.Supp. 828, 832-33 (N.D.Ill.1985) (requiring more than a single scheme). This court, however, has examined the pattern requirement in two recent opinions, Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36 (3d Cir.1987), and Marshall-Silver Construction Co. v. Mendel, 835 F.2d 63 (3d Cir.1987), and has rejected the notion that at least two schemes must be alleged and that they must be ongoing or open-ended.
 
 
 45
 In Barticheck, the defendants were a drilling partnership, a bank, and two officers of the bank. The plaintiffs, investors in the partnership, alleged that the organizers of the partnership had pre-existing debts to the bank, and that only by selling interests in the partnership could funds be raised to pay off the debt. The plaintiffs alleged that the partnership, acting in concert with the bank officers, materially misrepresented the risks involved in the partnership and the extent of the bank's financing of the partnership. The plaintiffs borrowed all or nearly all of the purchase price of their shares in the partnership from the bank, which did not follow routine loan procedures. Partnership interests turned out to be worthless, and plaintiffs sued, charging that the partnership organizers, with help from bank officers, had defrauded the plaintiffs in violation of civil RICO and state law. The district court dismissed the complaint on the pleadings, holding that the complaint failed to allege a RICO pattern.
 
 
 46
 We reversed, rejecting the notions that more than one scheme must be alleged and that a scheme must be ongoing or open-ended, and concluded that a case-by-case analysis should be undertaken to determine "the extent of the racketeering activity." Barticheck, 832 F.2d at 40. We indicated that a determination of whether the facts alleged comprise a RICO pattern with the requisite "continuity plus relationship," Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, turns on a combination of the following factors: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. Id. at 39. We held that the complaint met the RICO pattern requirement because its allegations of a scheme carried out by several individuals and two entities (the bank and the partnership), whose misrepresentations were repeated to roughly twenty individuals, "certainly comports with the ordinary understanding of" the word "pattern." Id.
 
 
 47
 In Marshall-Silver, filed a month after Barticheck, we upheld a dismissal for failure to allege a sufficient pattern. In Marshall-Silver, a general contractor alleged that over the course of a year the defendants--an engineering firm, its officers, and a law firm of which the officers were members--fraudulently forced the general contractor into bankruptcy. According to the general contractor, the engineering firm subcontracted with the general contractor, but because the engineering firm's performance was late and was of poor quality the general contractor refused to pay. The engineering firm's officers thereupon confronted the general contractor regarding payment and wrote two letters threatening to destroy the general contractor unless it paid the engineering firm for the work. The defendants subsequently filed a petition for involuntary bankruptcy against the general contractor and contacted the press in order to publicize the filing of the petition. The press reported that the general contractor was bankrupt, leading to its inability to obtain needed construction bonds. The general contractor alleged that the defendants knew the petition was false, and alleged that the petition and subsequent publicity led ultimately to the destruction of its business. The bankruptcy court later dismissed the petition.
 
 
 48
 We held that these facts did not meet the Barticheck pattern requirement, noting that "[t]he target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time." Marshall-Silver, 835 F.2d at 66-67. We concluded that the facts failed to meet the pattern requirement because they comprised allegations of an activity that involved a single victim and a single injury, and that involved a single, short lived scheme with only two active perpetrators. Id. at 67. An examination of the instant case in light of the several factors enumerated in Barticheck and Marshall-Silver indicates that appellants' allegations meet the pattern requirement.
 
 
 49
 First, whereas the Marshall-Silver court identified only two active perpetrators and the Barticheck court identified two corporate entities and "several individuals,"[16] the number of alleged perpetrators here includes C-E and four of its officers. Next, despite C-E's attempts to characterize the acts as a "single event," the number of acts involving Saporito and the other appellants included at least the thirty-two inducements to retire, as well as perhaps the acts of informing other individuals that they should postpone retirement until the second plan was offered. By comparison, in Barticheck approximately twenty-three acts were found sufficient to constitute a pattern, whereas Marshall-Silver involved only six. Similarly, the number of victims in the case sub judice includes the thirty-two plaintiff-employees, as compared to twenty in Barticheck and one in Marshall-Silver. Moreover, regarding "the similarity of the acts," the acts alleged by appellants--the fraudulent inducements to retire under the less lucrative plan--were virtually identical to one another. So too were the wrongful acts held sufficient in Barticheck, which involved the fraudulent inducement to invest in the fraudulent partnership. Finally, the length of time involved here was roughly six months, the Marshall-Silver activities extended over a similar period, and it is unclear how long the activities extended in Barticheck.[17]
 
 
 50
 On the whole, we are satisfied that, if proven, the multiple inducements to retire made to at least thirty-two individuals over an extended period satisfy the "continuity plus relationship" requirement, and thus constitute a "pattern of racketeering activity."
 
 C. Combustion Engineering's Liability
 
 51
 Appellants alleged in Count III that the individual defendants "each violated 18 U.S.C. Sec. 1962(c)," and that C-E "itself violated 18 U.S.C. 1962." J.A. at 58. Section 1962(c) states:
 
 
 52
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 53
 18 U.S.C. 1962(c) (emphasis added). C-E contends that, although the district court did not reach the issue, its dismissal of Count III was proper as to C-E because civil RICO Sec. 1962(c) makes it unlawful for "persons" to engage in certain criminal activity, yet appellants pleaded that C-E was not a person but an "enterprise." In B.F. Hirsch v. Enright Refining Co., 751 F.2d 628 (3d Cir.1984), we held that for the purposes of Sec. 1962(c) a person and an enterprise may not be the same entity, hence that an enterprise may not be held liable under the section. Appellants agree that their pleadings designated C-E as an enterprise and not as a person, but make two responses.
 
 
 54
 First, appellants respond that C-E can still be held liable under the doctrine of respondeat superior. However, we held in Petro-Tech, Inc. v. Western Co. of North America, 824 F.2d 1349, 1358 (3d Cir.1987), that although "the doctrine of respondeat superior may be applied under RICO where the structure of the statute does not otherwise forbid it," the doctrine may not be applied to actions under Sec. 1962(c). Second, in the event respondeat superior liability is unavailable, appellants contend that Count III refers to Sec. 1962 "generally" and not specifically to Sec. 1962(c). Although appellants do not indicate which subsection Count III refers to, we note that 1962(a) provides in relevant part:
 
 
 55
 It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce.
 
 
 56
 We observed in Petro-Tech that the language of Sec. 1962(a) differs from the language in Sec. 1962(c), and that " '[s]ubsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate.' " 824 F.2d at 1360 (quoting Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384, 402 (7th Cir.1984), aff'd per curiam, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)).
 
 
 57
 As a result, we held in Petro-Tech that "so long as the enterprise does in fact benefit from the racketeering activity challenged, there is no reason why we must ignore the corporation's role in the activity, if any, and no reason why an injured third party may not recover from the enterprise." 824 F.2d at 1361. However, because Count III does not specify whether appellants are claiming under Sec. 1962(a) or Sec. 1962(c), we conclude that there was insufficient information to determine whether Count III should have been dismissed as to C-E. We will therefore reverse the district court's dismissal of Count III and remand with instructions to allow appellants to amend the complaint to provide greater specificity.
 
 VI. CONCLUSION
 
 58
 For the reasons stated above, we will affirm the district court's judgment insofar as it dismissed Count I of the complaint, reverse the judgment insofar as it dismissed Counts II and III, and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although the district court referred to the dismissal in its letter memorandum as a summary judgment, the dismissal was based on the pleadings and the parties agree that it was in fact a dismissal under Fed.R.Civ.P. 12(b)(6), hence we will treat it as such on appeal
 
 
 [2]
 The amount of the lump-sum special separation payment was determined in accordance with the following schedule:
 YEARS OF SERVICE NUMBER OF WEEKS OF SEPARATION PAYMENT
 04 8
 58 10
 912 12
1316 14
1720 16
2124 18
2528 20
2932 22
3336 24
3740 26
4144 28
45 & Over 30
 
 
 [3]
 According to appellants' complaint, the benefits listed below were offered in the VSIP plan but not in the VESP plan:
 Unreduced Early Retirement Benefits--Electing participants received their full pension benefit from the C-E Salaried Plan earned as of their separation date with no reduction for early commencement of payments. This improvement increased their benefits approximately 5% for employees age 61 to as much as 25% for employees age 53 to age 55.
 Surviving Spouse Benefits--Electing participants received surviving spouse benefits under the C-E Salaried Plan without any reduction in their full pension benefit.
 Supplemental Pension Benefit--Electing participants received a supplemental pension benefit equal to $20 per month for each year of service, with a minimum benefit of $3,120 per year ($260 per month), and a maximum benefit of $4,800 per year ($400 per month).
 Retiree Medical and Dental Benefits--Retiree medical and dental benefits were provided without charge to all electing participants and their eligible dependents.
 Life Insurance Benefits--Retiree life insurance coverage equal to $100 per year of service up to a maximum of $2,500 was provided.
 Thrift Investment Plan--Electing participants received a distribution of their entire Thrift Account and Tax Savings Account including the full Company match.
 
 
 [4]
 The district court stated that: "Plaintiffs allege C-E disclosed the planning and development of VSIP to other C-E employees allowing those chosen employees to make a choice between VESP or VSIP. Because the allegations in a complaint are to be accepted as true, Plaintiffs should be allowed to proceed further with the litigation." J.A. at 23-24
 
 
 [5]
 The court stated that it had "improvidently included" its statement regarding appellants' allegations that C-E disclosed information about the development of the VSIP plan to certain employees and "recalled" the statement
 
 
 [6]
 C-E also contends that the claim is "without merit" because the complaint does not specifically reference Sec. 510. We disagree. The complaint, in Count II, clearly provides notice of the nature of the claim and that the claim was made under ERISA. Moreover, appellants raised the Sec. 510 arguments during the proceedings before the district court as well as on appeal
 
 
 [7]
 C-E argues that the Court of Appeals for the Fourth Circuit rejected just such a "but for" participation status in Stanton v. Gulf Oil Corp., 792 F.2d 432 (4th Cir.1986). However, Stanton is distinguishable because it did not involve a Sec. 510 action, and because the plaintiff there urged the court to consider him to be a participant because he would have been such but for future events under his control. The plaintiff did not sustain his claim that the employer misled him into opting to retire. Appellants, on the other hand, allege that they would have been participants but for C-E's selective divulgence of information about VSIP, and at the pleading stage we must assume their ability to prove it
 
 
 [8]
 Cf. Garry v. TRW, Inc., 603 F.Supp. 157, 162 (N.D.Ohio 1985) ("The fact that TRW paid Garry all that he was entitled to at the time of his discharge is not dispositive of the questions of whether Garry would have been entitled to more benefits if he had not been discharged, or whether a reduction in benefits was a reason for his discharge."); Bruch v. Firestone Tire and Rubber Co., 828 F.2d 134, 151-53 (3d Cir.1987) (participant status for the purposes of standing under ERISA Sec. 502(c) regarding provision of information "would most sensibly extend both to people who are in fact entitled to a benefit under the plan and to those who claim to be but in fact are not")
 
 
 [9]
 See Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.) (employees alleging discrimination in Sec. 510 actions must make out a prima facie case, much like Title VII actions; "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled"), cert. denied, --- U.S. ----, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)
 
 
 [10]
 Compare Greenblatt v. Budd Co., 666 F.Supp. 735, 740 (E.D.Pa.1987) (harassment intended to force employee to retire is actionable under Sec. 510) with UAW v. Park-Ohio Indus., Inc., 661 F.Supp. 1281, 1304 (N.D.Ohio 1987) (misrepresentations regarding decision to retire are not actionable under Sec. 510 because "Sec. 510's purpose is to protect the employment relationship," not retirement decisions)
 
 
 [11]
 Section 1961(1) states in pertinent part: "As used in this chapter--(1) 'racketeering activity' means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...." 18 U.S.C. Sec. 1961(1) (1982)
 
 
 [12]
 Appellants' civil RICO count further alleges:
 
 
 [64]
 Defendants each willfully failed or refused to disclose the existence of and imminent offering of VSIP to plaintiffs during the opt-in period
 
 
 [65]
 Defendants or persons acting under their direction or control did provide notice that C-E was in the process of planning and promulgating VSIP to certain C-E employees other than plaintiffs during the opt-in period who, on the basis of the information provided to them, declined to participate in VESP and instead waited and elected to participate in VSIP
 
 
 [66]
 Defendants' willful omission of such material and relevant information to plaintiffs during the VESP opt-in period was done with the specific intention of inducing plaintiffs to elect to participate in VESP, and to prevent them from obtaining the benefits they were entitled to under VSIP
 ....
 
 
 [69]
 Defendants' conduct in failing or refusing to disclose material information to each of the plaintiffs during the opt-in period with the intention of inducing each of the plaintiffs to elect to participate in VESP and to prevent plaintiffs from obtaining the benefits offered under VSIP and by disclosing to certain C-E employees other than plaintiffs the existence and imminent offering of VSIP during the VESP opt-in period each constitutes a separate and distinct violation of their fiduciary obligations to plaintiffs and a scheme or artifice to defraud plaintiffs within the meaning of 18 U.S.C. Sec. 1341
 J.A. at 55-57.
 
 
 [13]
 The First Circuit in New England Data Serv., Inc. v. Becher, 829 F.2d 286 (1st Cir.1987), adopted a somewhat lenient approach, holding that although Rule 9(b) requires pleading fraud in RICO cases with the same specificity as required in other cases, where plaintiff's allegations make it likely that a claim will be made out and where information is in the exclusive control of defendant, dismissal is improper without further discovery. Id. at 290
 Other circuits have strictly applied the Rule 9(b) pleading requirement to allegations of civil RICO fraud. See, e.g., Blount Fin. Serv., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152 (6th Cir.1987) ("Fraud alleged in a RICO civil complaint ... must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact."); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986) (pleadings must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"); Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir.1984) ("To satisfy FRCP 9(b), a plaintiff must at minimum allege the time, place and contents of the misrepresentation(s) upon which he relied.").
 In Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384, 404-05 (7th Cir.1984), aff'd per curiam, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), the Seventh Circuit rejected the argument that a fraud pleading must be as specific as a criminal bill of particulars and determined that the Rule 9(b) particularity requirement was met where "the complaint adequately specified the transactions, the content of the allegedly false representations, and the identities of those involved."
 
 
 [14]
 Appellants maintain that because "the Complaint alleges that defendants actively induced plaintiffs to opt for the VESP retirement plan while withholding information about the VSIP plan, and at the same time divulging such information to other selected employees," it meets the pleading requirement. Appellants' Reply Br. at 14
 
 
 [15]
 Cf. Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986), where the complaint was found insufficient to meet the 9(b) requirements alleged:
 [T]he Defendants Serv-Well, Landmark, John W. Lee and James A. Lee have engaged in racketeering activity ... by engaging on two or more occasions the use of the United States mail and/or use of interstate telephone calls for the purpose of executing or attempting to execute the aforesaid fraudulent scheme ... all of which conduct or acts are indictable under the provisions of Title 18, United States Code, Section 1341 (relating to mail fraud) and Section 1343 (relating to wire fraud).
 The allegations describing fraud in the other paragraphs of the complaint had not mentioned use of the mails or telephones, and thus the court concluded that the pleadings failed to meet the Rule 9(b) requirement that "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Id.
 
 
 [16]
 The Barticheck opinion mentions "several individuals," 832 F.2d at 39, and the factual discussion mentions two individuals, a vice president and the vice chairman of the bank. Thus it is unclear whether "several individuals" includes just the two bank officers or whether others were involved
 
 
 [17]
 The sixth factor identified in Barticheck, the character of the activity, may be relevant to the pattern determination in some cases, but given that the other factors support our conclusion that appellants have properly alleged a pattern, and its equivocal import, see infra, we need not decide its impact here. We note that the conduct alleged here amounted to an attempt to induce appellants to retire early in order to deny them participation in the more lucrative retirement plan. Even if this activity may have a legitimate purpose where a company must scale back its workforce by inducing employees to retire, the allegations that certain employees were secretly told to wait for the second plan may raise the allegations to the level of fraud. See supra p. 669. Barticheck involved a scheme to defraud investors via a fraudulent partnership, where there could have been no legitimate purpose for the scheme. Marshall-Silver, on the other hand, involved allegations of fraud in the filing of a bankruptcy petition, which could have been the result of an overly aggressive attempt to perform a legitimate act--to gain payment for work performed. This case falls somewhere in between