Ilene T. SCHWARTZ and Steven Schwartz, on behalf of themselves and all others similarly situated,

v.

PHILADELPHIA NATIONAL BANK, et al.

Civ. A. No. 88–2587.

United States District Court, E.D. Pennsylvania.

Oct. 20, 1988.

Mark S. Guralnick, Garber & Guralnick Law Offices, Mt. Laurel, N.J., Steven M. Kramer, Steven M. Kramer & Associates, Philadelphia, Pa., for plaintiffs.

Gregory M. Harvey, Thomas G. Wilkinson, Jr., Glen R. Stuart, Morgan, Lewis & Bockius, Philadelphia, Pa., for Philadelphia Nat. Bank d/b/a PNB Discount Brokerage Service & Kelly, Kevin.

C. Clark Hodgson, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for National Financial Services Corp.

Reeder R. Fox, Duane, Morris & Heckscher, Philadelphia, Pa., for Pershing.

MEMORANDUM

NEWCOMER, District Judge.

This is an action by two dissatisfied securities customers against their broker and others who allegedly failed to place their trading orders in a timely fashion. Plaintiff's amended complaint consists of ten counts. Counts VI and VIII are federal claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) and under Rule 10b–5 of the Securities Exchange Act of 1934; the eight remaining claims are pendent state law claims.

Presently before the court are motions filed by defendants Philadelphia National Bank (PNB) and its broker-employee Kevin Kelly, National Financial Services Corporation (National), and the Pershing Division of Donaldson, Lufkin, & Jenrette Securities Corp. (Pershing). The motions seek dismissal of the federal claims under Fed.R.Civ.P. 9(b) and 12(b)(6), and then dismissal of the remaining state law claims under Fed.R. Civ.P. 12(b)(1) because the court would lack subject matter jurisdiction over the state claims if the federal claims are dismissed.

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept the allegations in the complaint as true. The complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273 (3d Cir.1985).

## I. RICO Count

Count VI of the amended complaint alleges violations of RICO Sections 1962(a), (b), and (c) as prohibited by 18 U.S.C. § 1962(d).[1] I will address each of these sections in turn.

---

1. In relevant part, 18 U.S.C. § 1962 provides: (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities

#### A. *Sections 1962(a) and (b)*

■ Sections 1962(a) and (b) proscribe certain uses of the proceeds of racketeering activity. In order to state a claim under these sections, plaintiffs must allege that they suffered an injury by reason of a violation of these subsections. *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 181 (E.D.Pa.1988) (citing *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 109 (E.D.Pa. 1986)); *Rich Maid Kitchens v. Pa. Lumbermens Mut. Ins. Co.*, 641 F.Supp. 297, 311 (E.D.Pa.1986), *aff'd*, 833 F.2d 307 (3d Cir.1987). In their amended complaint, plaintiffs allege that defendants' pattern of racketeering activities "were used either to acquire an interest in an enterprise [§ 1962(a) and (b) ] or to conduct the affairs of an enterprise [§ 1962(c) ]. Amended Complaint, ¶ 67(b). Beyond this conclusory allegation, plaintiffs do not demonstrate any causal relationship between alleged violations of sections (a) and (b) and plaintiffs' alleged damages. On the present record, the court is unable to conceive of any injury that plaintiffs might have suffered as a result of alleged violations of sections 1962(a) and (b). Plaintiffs' claimed injuries were caused by the alleged pattern of racketeering activities; "whether defendants did or did not invest the proceeds in a business affecting commerce cannot have been causally related to any injury to plaintiff." *Gilbert*, 643 F.Supp. at 109. Thus, the court finds that plaintiffs lack standing to bring a RICO action under § 1962(a) or (b).

#### B. *Section 1962(c)*

■ Section 1962(c) prohibits any person employed by or associated with an enterprise from conducting or participating in that enterprise's affairs through a pattern of racketeering activity. "To survive a Rule 12(b)(6) motion, a civil RICO claim must allege (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 673 (3d Cir.1988) (petition for cert. filed July 28, 1988) (citations omitted). Defendants' motions cite numerous alleged defects in plaintiffs' section 1962(c) claim including plaintiffs' failure: (1) to identify the culpable RICO "person" and "enterprise"; (2) to plead sufficient facts showing the existence of an enterprise; and (3) to set forth sufficient facts to show a "pattern of racketeering activity." In response, plaintiffs have cited *LSC Associates v. Lomas & Nettleton Fin. Corp.*, 629 F.Supp. 979 (E.D.Pa. 1986), for the proposition that defendants have improperly confused plaintiffs' burden to state a claim and the burden they have to prevail on a RICO claim. For the most part, plaintiffs claim that they need not "prove" the RICO requirements at this point, and that "allegations" will suffice.

As defendants note, *LSC* was decided before the Third Circuit's decisions in *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36 (3d Cir.1987); *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63 (3d Cir.1987) (petition for cert. filed Feb. 12, 1988); and *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666 (3d Cir. 1988) (petition for cert. filed July 28, 1988). In *Marshall–Silver*, the court of appeals affirmed the district court's dismissal of a RICO complaint, finding that it failed to allege a pattern of racketeering activity. In addition, the court rejected the plaintiff's claim that it should have been allowed to amend the complaint. *Marshall–Silver*, 835 F.2d at 67, 67 n. 5. In *Barticheck* and

of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

*Saporito,* the Third Circuit reversed district court dismissals of RICO complaints. These reversals were based on analysis of specific factors used to determine whether the facts alleged comprised a RICO pattern, however, and not on a refusal to address the sufficiency of the allegations contained in the complaint. Based on these recent decisions of the Third Circuit, I believe it entirely proper for the district court judge to examine the sufficiency of RICO allegations in a complaint. *See also Salvador v. Mazzocone,* No. 86–7605 (E.D.Pa. Jan. 11, 1988) (Newcomer, J.) [available on WESTLAW, 1988 WL 2070] (granting motion to dismiss when complaint failed to satisfy the "pattern of racketeering activity" requirement in section 1962).

### 1. "Pattern" Requirement

■ Under Third Circuit precedent, determination of "whether the facts alleged comprise a RICO pattern with the requisite 'continuity plus relationship' ... turns on a combination of the following factors: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity." *Saporito v. Combustion Eng'g Inc.,* 843 F.2d 666, 676–77 (3d Cir.1988) (petition for cert. filed July 28, 1988) (citing *Barticheck,* 832 F.2d at 39).

Again, the recent Third Circuit cases provide guidance on how the factors apply to particular situations. In *Barticheck,* the court found the complaint met the RICO pattern requirement because it alleged a scheme of twenty-three virtually identical acts (fraudulent inducement to invest in a fraudulent partnership) carried out by several individuals and two entities, whose misrepresentations were repeated to twenty individuals. Similarly, in *Saporito* the complaint met the pattern requirement when it alleged a scheme of some thirty-two identical acts (fraudulent inducements to retire under a less lucrative plan), carried out by four individuals and a corporation over a six month period involving thirty-two victims.

By way of contrast, the court of appeals upheld dismissal of the complaint in *Marshall–Silver* for failure to allege a sufficient pattern. That case involved allegations of an activity (misconduct in filing a fraudulent involuntary bankruptcy petition against plaintiff) involving a single victim, a single injury, and a single, "short-lived" scheme (approximately six months) with only two active perpetrators. Such a factual scenario, the court concluded, simply was "not criminal activity with the kind of continuity [referred to] in *Barticheck.*" *Marshall–Silver,* 835 F.2d at 67.

As stated by the Third Circuit, "[t]he target of the RICO statute, as its name suggests, is criminal activity that because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time." *Marshall–Silver,* 835 F.2d at 66–67. Examination of the facts in this case leads to the conclusion that the facts alleged fail to meet the pattern requirement. According to the complaint, this lawsuit arises as a result of a failure to timely execute the Schwartz's securities trading orders. Named as defendants ("perpetrators") are PNB, broker Kevin Kelly, National, and Pershing. The complaint alleges that defendants' acts had two victims: Steven Schwartz and Ilene Schwartz.[2] It states that defendants breached warranties and broke promises (presumably by failing to properly and timely execute trades) to plaintiff "on September 24, 1986, October 6, 1986, and other specific transaction dates." Amended Complaint, § 24.

In a nutshell, then, this lawsuit involves two victims, two injuries (loss of money by both victims), and a short-lived scheme lasting less than two months perpetrated by one named individual and three corporations. In placing this factual situation on the "pattern" spectrum evolving in the

---

**2.** Correspondence from defendant Kelly is addressed only to Steven Schwartz; it makes no mention of Ilene Schwartz, Steven's mother. *See* PNB and Kevin Kelly's Memorandum in Support of Motion to Dismiss, Exhibits H, I, and J. Given this correspondence and plaintiffs' close relationship, I might just as easily have considered them a single victim.

Third Circuit, it is much closer to *Marshall–Silver* than to either *Barticheck* or *Saporito*. Moreover, I do not believe that the complaint describes the type of criminal activity that the RICO statute was designed to arrest. Therefore, I find the factual scenario alleged by the Schwartz's fails to satisfy the pattern requirement of section 1962(c).

### C. *Section 1962(d)*

■ Section 1962(d) makes it unlawful for persons to conspire to violate sections 1962(a), (b), or (c). A claim cannot be made under § 1962(d), then, in the absence of a viable claim under § 1962(a), (b), or (c). Because no viable claim has been made under any of those sections in the present case, plaintiffs' § 1962(d) claim also fails. *See Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 182 (E.D.Pa.1988).

### II. Rule 10b–5 Count

Count VIII of the amended complaint alleges that defendants' conduct violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240 10b–5 (1987). On the motion to dismiss, defendants allege numerous deficiencies in plaintiff's Rule 10b–5 count. As explained below, I need address only one of the claimed deficiencies: the applicable statute of limitations.

Plaintiffs Ilene T. and Steven Schwartz filed their initial complaint on March 28, 1988 and amended it on June 29, 1988. In paragraph 16 of the amended complaint, plaintiffs allege that, although the exact dates of defendants' alleged warranties and promises are unknown, defendants made and reiterated those warranties and promises and plaintiffs relied on them in 1985 and 1986. Again, in paragraph 22, plaintiffs allege that they relied upon defendants' representations and promises and began doing business with PNB "throughout 1985 and 1986 and other periods of time." Similarly, they contend that defendants "breached their expressed and implied

warranties to the plaintiffs and broke their promises, on September 24, 1986, October 6, 1986, and other specific transaction dates." Amended Complaint, § 24. Finally, plaintiffs allege that their trading with PNB began in January 1985 and continued throughout 1985 and 1986. *Id.*, ¶ 41.

■ Prior to 1988, the Third Circuit had twice considered the proper limitations period for section 10(b) and Rule 10b–5 cases. In *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979), Judges Gibbons and Sloviter applied the period set forth in the state general fraud statute; in dissent, then Chief Judge Seitz would have applied the states Blue Sky law. One year later the court decided *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir. 1980). In *Biggans*, Judge Sloviter and Gibbons opted for the state general fraud statute, while Judge Weis selected the state Blue Sky law. Thus, by the end of 1980, four judges from the Third Circuit had considered the issue: two would have applied the state general fraud laws and two would have used the Blue Sky statutes. Thus, at that time, and I conclude at all times relevant to the instant action, "the law in the circuit on this point could fairly be described as uncertain." *Hill v. Equitable Trust Co.*, 851 F.2d 691, 697 (3d Cir.1988).

The shroud of uncertainty was lifted finally in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988), *cert. denied sub nom Vitiello v. V.I. Kahlowsky and Co.*, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), in which the Third Circuit set forth the statute of limitations applicable to Rule 10b–5 claims. The court stated:

> Accordingly, we have decided that the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation.

*Id.* at 1550.

Whether the holding in *Data Access* would be applied retroactively was addressed recently in *Hill v. The Equitable*

*Trust Co.*, 851 F.2d 691 (3d Cir.1988). The court cited a standard from *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which set forth three qualifications for making a decision prospective only, as follows:

> (1) The holding must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
>
> (2) The merits and demerits in each case must be weighed by looking to the history of the rule in dispute, its purpose and effect, and whether retrospective operation will further or retard the rule's operation;
>
> (3) Retrospective application must create the risk of producing substantially inequitable results.

*Hill,* 851 F.2d at 696 (citing *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355–56). Applying this test, the court concluded that retroactive application of *Data Access* was appropriate. *Hill,* 851 F.2d at 694–99. Because the *Hill* decision does not indicate whether *Data Access* should be retroactively applied in all instances, brief consideration of the *Chevron* criteria is warranted.

As to the first criteria, the applicable law in the Third Circuit can fairly be described as "uncertain" from 1980 until the *Data Access* decision in 1988. *See Hill,* 851 F.2d at 697; *supra* p. 96. Accordingly, there was no controlling authority or clear precedents on which plaintiffs reasonably could have relied in deciding when to bring suit. Additionally, the Circuit has stated that the resolution in *Data Access* was not completely "an issue of first impression whose resolution was not clearly foreshadowed." *Hill,* 851 F.2d at 698 (quoting *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355). Thus, I am unable to say that the first *Chevron* criteria is satisfied.

Regarding the second criteria, the Third Circuit indicated in *Hill* that resolution of whether retrospective operation of *Data Access* would further or retard the rule's function is neutral.

As to the third and final criteria, because of the uncertainty in the law at all times relevant to this action, I conclude that it would not be inequitable or harsh to apply *Data Access* retrospectively to bar the Schwartzs' Rule 10b–5 claim. *See Hill,* 851 F.2d at 698; *cf. Fitzgerald v. Larson,* 769 F.2d 160 (3d Cir.1985) (applying section 1983 statute of limitations retroactively when, inter alia, a definitive ruling on the appropriate period was lacking at the time the complaint was filed); *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d Cir.), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) (same).

■ Having determined that the limitations period adopted in *Data Access* controls the instant case, I now must decide whether the Schwartzs' 10b–5 claim is time barred. In this regard, plaintiffs make no contention that their trading with the defendants extended beyond the end of 1986. With regard to the few transaction dates identified from which transactions plaintiffs' alleged injuries arose, the latest date specified in the amended complaint is October 6, 1986. *Id.,* ¶ 24. As reflected in several letters between plaintiff Steven Schwartz and defendant Kevin Kelly, Mr. Schwartz questioned the transactions at issue in this action and Mr. Kelly responded thereto at the time of the transactions and shortly thereafter. *See* PNB and Kevin Kelly's Memorandum in Support of Motion to Dismiss, Exhibits H, I, and J (two letters dated October 17, 1986, and one dated January 11, 1987, referring to trades occurring between August 28, 1986 and October 10, 1986).

Thus, based on the information before me, plaintiffs appear to have been aware of the facts that they allege violated Rule 10b–5 as early as the fall of 1986 and certainly by January 12, 1987 (*see* PNB and Kevin Kelly's Memorandum in Support of Motion to Dismiss, Exhibit J). Plaintiffs did not institute this suit, however, until March 28, 1988—more than one year later. That plaintiffs 10b–5 claim must be time barred was first raised in PNB's Memorandum of Law in Support of Motion to Dismiss filed August 2, 1988. Although the

Schwartz's Opposition Memorandum attempted to rebut defendants claims of insufficiency in the 10b–5 count, they failed to mention and made no attempt to counter the limitations period problem identified in PNB's memorandum. *See* Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motions to Dismiss the Amended Complaint.

Because the Schwartz's complaint was not filed within one year of discovering the facts constituting the alleged 10b–5 violation, the court will dismiss Count VIII of the amended complaint.

### III. Remaining Counts

Absent the RICO and Rule 10b–5 counts, the Schwartz's amended complaint sets forth only state law claims. I decline to exercise pendent jurisdiction over such claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

An appropriate order follows.

### ORDER

AND NOW, this 20th day of October, 1988, upon consideration of the defendants' motions to dismiss and plaintiffs' response thereto, it is hereby Ordered that defendants' motions are GRANTED and the federal claims asserted in plaintiffs' second amended complaint are DISMISSED WITH PREJUDICE and the pendent state claims are DISMISSED for lack of jurisdiction.

AND IT IS SO ORDERED.