**CEMAR, INC., t/a Rising Sun Motors**

v.

**NISSAN MOTOR CORPORATION IN U.S.A.**

**Appeal of CEMAR INC.**

**No. 89–3582.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 1, 1990.

Decided Feb. 27, 1990.

the fair dealing requirement of ERISA." We will deny the motion.

Franklin T. Caudill, Semmes, Bowen & Semmes, Baltimore, Md., for appellant.

Reed E. Hundt, Eric A. Stern, Carol Ann Siciliano, Stefanie Boinski, Washington, D.C., for appellee.

Before STAPLETON and MANSMANN, Circuit Judges, and ACKERMAN, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal from an entry of summary judgment against an automobile dealer in his suit for breach of contract, violation of the Sherman Act, and negligent misrepresentation brought against his automobile dealership franchiser, we are faced with a question of whether the district court's certification for appeal pursuant to Federal Rule of Civil Procedure 54(b) satisfies the requirements of *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) and *Allis–Chalmers Corp. v. Philadelphia Electrical Co.*, 521 F.2d 360 (3d Cir.1975). Since we conclude that the district court failed to sufficiently explain its reasons for Rule 54(b) certification, we will dismiss the appeal, vacate the judgment entered July 19, 1989 as final pursuant to Rule 54(b) and remand the case to the district court for further proceedings.

### I.

Cemar, Inc., a Delaware Corporation, was founded by its president William T. Murray in 1973. Mr. Murray had been a automobile salesman for a number of years when he received financial backing from a previous employer in order to open a Nissan dealership in Rising Sun, Maryland. By 1976, Murray realized the market in Rising Sun, a small rural community, was too small to support a Nissan dealership. He attempted several times to have the dealership relocated, but Nissan denied his requests.

After 1980, the financial situation at Murray's dealership began to worsen due to high interest rates and the general nationwide recession. By 1982, Murray intensified his efforts to obtain a new location when he learned that the road leading to his dealership was to be closed in order for repairs to be made to the bridge. Sometime around May, 1982, three Nissan representatives visited Murray and informed him that Nissan would approve his move from Rising Sun to Perrysville, Maryland. Although Murray still felt he could have a better location, he was pleased to be leaving the Rising Sun location.

One of the aspects of the Nissan dealership at Rising Sun which Murray wanted to carry over to the Perrysville dealership was the perpetual nature of the contract rather than have an agreement for a specific number of years.[1] The district sales manager arranged for Cemar, Inc. to take a five year lease on the Perrysville dealership, with a minimum of two five year options. On July 1, 1982, Murray sent a form commitment letter to Nissan with respect to the Perrysville location and, by way of a second form, terminated the existing agreement between Cemar, Inc. and Nissan. Murray alleges that when he questioned the second form, the district sales manager dismissed it as a mere procedure. In addition, Murray was given a two year term agreement which he was required to sign in blank. When Murray received the form from Nissan, the time period had been unilaterally changed to one year. Murray finally opened the Perrysville dealership in late August or early September, 1982.

As part of the agreement between Nissan and Murray, Nissan was to allocate to Murray a set number of cars each month. The dealer allocation started at sixteen cars and gradually dwindled down to two. The

[*] Honorable Harold A. Ackerman of the United States District Court for the District of New Jersey, sitting by designation.

1. Murray claims Nissan mislead him into believing that the "dealership in perpetuity" would carry over.

Perrysville dealership was never successful and Murray incurred significant losses which required him to get additional bank financing. Eventually, Murray realized he would have to sell the dealership to avoid bankruptcy. Murray met with Tim and A.J. Cox to discuss the plans for a sale. They had originally discussed a $600,000 deal, but the Coxes lowered their offer to the amount of Murray's indebtedness. A Buy/Sell Agreement was reached in March, 1983.

Murray, through Cemar, Inc., brought suit against Nissan[2] alleging *inter alia:* violation of the Automobile Dealers' Day In Court Act, 15 U.S.C. §§ 1221 *et seq.*, which provides that a dealer may recover damages caused by the failure of an automobile manufacturer to comply with the terms of a franchise; violation of the Maryland Transportation Code, Md. Trans. Code Ann. 15–207, 15–209, 15–211; violations of the Sherman Act, RICO and Robinson–Patman Act; negligent misrepresentation; and breach of contract. Nissan counterclaimed against Cemar, Inc., its president William T. Murray, and its shareholders alleging fraud, misrepresentation, breach of contract, and unlawful interception of oral communications.[3] In addition, Nissan filed a motion to dismiss the Sherman Act, Robinson–Patman Act, and RICO claims. The district court granted the motion and gave Cemar 30 days to amend its complaint, however, Cemar was unable to allege any new facts to save those counts. In July, 1988, Nissan filed a motion for summary judgment, which was granted May 17, 1989. 713 F.Supp. 725. On July 17, 1989, the district court entered its order granting judgment for Nissan on its motion to dismiss and the motion for summary judgment. The district court certified the order pursuant to Rule 54(b) finding there was "no just reason for delay in entry of judgment." Nissan's counterclaims remain, however. The judgment was entered July 19, 1989. Cemar, Inc. appeals.

II.

We have jurisdiction of a final order pursuant to 28 U.S.C. § 1291. Consequently, "our jurisdiction depends upon whether the district court properly granted 54(b) certification." *Allis–Chalmers Corp. v. Philadelphia Electric*, 521 F.2d 360, 362 (3d Cir.1975). Thus, when faced with an appeal from a Rule 54(b) certification of finality, we must "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980). We review a Rule 54(b) certification for an abuse of discretion.

Rule 54(b) provides in pertinent part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment ...

Fed.R.Civ.P. 54(b).

The question of when certification is proper has been one of considerable concern to the courts since the promulgation of the rule. "The rule attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Allis–Chalmers*, 521 F.2d at 363. In *Curtiss–Wright*, the Supreme Court reversed a decision of our court in which we had concluded that, due to the counterclaims and a possibility of a set-off, the status quo had to be maintained unless the petitioner for Rule 54(b) certification could show unusual or harsh circumstances. 446 U.S. at 9, 100 S.Ct. at

---

**2.** Suit was originally brought in the United States District Court for the District of Maryland, but was transferred to the district court in Delaware on the basis of forum non conveniens.

**3.** Murray had taped several telephone calls made to the Nissan district sales manager, unknown to the other party.

1465. The Supreme Court concluded that this was an unworkable standard for district courts to apply. Rather, since Rule 54(b) requires that the decision to certify be made at the sound discretion of the district court, "the proper role for the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from these weighings and assessments are juridically sound and supported by the record." 446 U.S. at 10, 100 S.Ct. at 1466.

In the case here, the district court failed to explain the analysis by which it determined there was no just reason for delay. Without an evaluation of "such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals", *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. at 1465, we cannot be certain if certification was proper. Because the reason for the Rule 54(b) certification is not apparent from the record, we need a statement of reasons by the district court in order to determine that juridical concerns have been met by its determination that no just reason remains for delay. We conclude that we do not have jurisdiction here in light of the unsupported Rule 54(b) order.

### III.

Since we do not have jurisdiction, we must dismiss the appeal, vacate the order of the district court entered as final pursuant to Rule 54(b), and remand to the district court for further proceedings consistent with this opinion.