David **GUBITOSI** et al., Plaintiffs,

v.

Yonas **ZEGEYE**, et al., Defendants.

No. 96–CV–4927.

United States District Court,
E.D. Pennsylvania.

Oct. 23, 1996.

Stephen R. Bolden, Fell & Spalding, Philadelphia, PA, for Plaintiffs.

Earl G. Kauffman, Philadelphia, PA, for Zegeye and Seleshi.

Edward R. Eidelman, Eidelman & Eidelman, P.C., Allentown, PA, for Karoly, Angstadt and Steckel.

Joseph I. McDevitt, Philadelphia, PA, for ZPR and ZP Investments.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

### INTRODUCTION

Plaintiffs, limited partners in the Lehigh Valley Physicians Imaging Center ("Lehigh Valley"), have brought this federal question action pursuant to 28 U.S.C. § 1331 in their individual capacities, and on behalf of Lehigh

Valley. Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as codified in 18 U.S.C.A. § 1961 *et seq*, and pendent claims.

Defendants Lauren B. Angstadt, ("Angstadt"), and Ross B. Steckel ("Steckel"), are limited partners of Lehigh Valley. Defendant ZPR Investments, Inc. ("ZPR") is the general partner of Lehigh Valley. Defendants Yonas Zegeye, ("Zegeye"), Hiruit Seleshi, ("Seleshi"), and Peter J. Karoly, ("Karoly"), are the sole shareholders and controlling parties of Defendant ZPR, and were also limited partners of Lehigh Valley during most of the time periods alleged in the complaint. Defendant ZP Investments, Inc. ("ZP") is the general partner of two limited partnerships to which defendants allegedly transferred funds belonging to Lehigh Valley.

All the defendants have filed motions to dismiss for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). This memorandum addresses these motions.

## BACKGROUND

Plaintiffs are limited partners in Lehigh Valley, an Imaging Center created to provide Magnetic Resonance Imaging ("MRI") services to patients.[1] Defendants apparently offered plaintiffs an opportunity to purchase partnership units in Lehigh Valley at $25,000 a unit. Plaintiffs were sent a confidential offering memorandum which, among other things, explained the risk factors involved in the venture. The offer was that once defendants had received enough investors willing to purchase partnership units, defendants would be able to use the funds to lease MRI equipment and form the limited partnership Imaging Center. The plaintiffs also allege that the confidential offering memorandum had a provision which stated that the limited partnership would be able to purchase the MRI equipment for one dollar ($1) at the end of the lease term (the "lease-purchase provision").

Plaintiffs allege that they purchased partnership units in reliance on the offering memorandum but defendants allegedly used the funds to purchase the MRI equipment in their own name, not that of Lehigh Valley. Plaintiffs further allege that defendants entered into a lease agreement (the "lease agreement") with Lehigh Valley which named defendants as lessor, and Lehigh Valley as lessee. Under this lease agreement, defendants would lease the MRI machine to Lehigh Valley for five years at a cost equal to the amount defendants were obligated to pay under the lease-purchase provision to acquire title in the partnership's name, plus $6,000 dollars a month. This lease agreement did not allow the partnership to purchase the equipment at the end of the lease term, as the offering memorandum had stated.

In addition, plaintiffs allege that defendants sent to them income statements which purportedly demonstrated that Lehigh Valley was paying for the leasing and maintenance of the MRI machine under the lease-purchase provision, thereby inducing plaintiffs to believe that those payments would lead to the partnership's eventual acquisition of the MRI machine. Plaintiffs learned of defendants' alleged fraud when they received a letter advising them of the status of their partnership interest in light of litigation pending against Defendant Zegeye and filed by Defendants Karoly and Steckel in state court. Apparently, Defendants Karoly and Steckel were alleging that Defendant Zegeye had removed financial records from Defendant ZPR and limited partnerships in which the three parties were involved. After the litigation, Defendant Zegeye purchased Defendants Karoly and Defendant Angstadt's interests in ZPR and Lehigh Valley.

Plaintiffs also allege that Defendant Zegeye committed the following improper acts: (a) writing checks from Lehigh Valley's account to finance his purchase of Defendant Karoly's interest and to pay his lawyers and accountants in connection with said purchase of Karoly's interest, (b) misappropriating

---

**1.** An MRI is a medical procedure which enables sophisticated radiologic diagnostic studies to be conducted.

funds from Lehigh Valley on his behalf and that of Defendant Karoly, and transferring said funds to Camp Hill Physicians Imaging Center ("Camp Hill") and Wyoming Valley Physicians Imaging Center ("Wyoming Valley") in violation of the partnership agreement, (c) misappropriating Lehigh Valley's funds and transferring it to himself in violation of the partnership agreement (d) paying himself and Defendant Karoly excessive consulting fees for unnecessary or unperformed work, and (e) sending a letter threatening to withhold distributions and file a lawsuit if plaintiffs did not sign an amendment to the partnership agreement which would state that the lease-purchase provision was a mistake, and which would revoke the option to purchase the MRI equipment.

After these acts, in December 1995, Defendant Zegeye initiated a lawsuit in the Court of Common Pleas of Northampton County on behalf of ZPR Investments, Inc. This lawsuit was filed against plaintiffs and all other limited partners in Lehigh Valley who had not signed the amendment, and it seeks a declaratory judgment confirming that the lease-purchase provision was a drafting mistake.

Plaintiffs believe that all the other limited partners sold their interest to Defendant Zegeye because of fear of the economic strain that a lawsuit would impose on them. As a result, Defendant Zegeye became the sole party controlling the general partner Defendant ZPR, and he thereby gained substantial control over the plaintiff Lehigh Valley.

Plaintiffs' complaint has eight counts, three federal law counts and five state law counts. The first three counts of the complaint allege RICO violations arising from defendants' alleged mail fraud, since many of the documents plaintiffs received from defendants were sent through the mail, and extortion, for the threats to file a lawsuit and withhold distributions.

The five state law counts are as follows: two for conspiracy, one for conversion, one for requesting punitive damages for willful, malicious, reckless and intentional conduct, and one for breach of the fiduciary duty of loyalty and requesting an accounting.

## DISCUSSION

### A. Motion to Dismiss Standard.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint's allegations must be construed in the light most favorable to the plaintiff. The court must accept as true all of the plaintiff's factual allegations and draw all reasonable inferences from them. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). Thus, the court will grant a Rule 12(b)(6) motion only if the facts and reasonable inferences therefrom are legally insufficient and it is clear that the plaintiff cannot prove any facts upon which relief could be granted. *Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 175 (3d Cir.1988). The court will apply this standard to each of the claims discussed below.

### B. Defendants Zegeye, Seleshi, Steckel, ZP Investments Inc., and ZPR Investments Inc.'s Motions to Dismiss

Defendant ZPR Investments filed a motion to dismiss. Defendants Zegeye, Seleshi, and ZP Investments Inc. filed a motion to dismiss in which they incorporated Defendant ZPR Investments Inc's motion to dismiss in its entirety, without adding any further allegations or arguments. Furthermore, all of the arguments raised by Defendant Steckel in his motion to dismiss have been made by these defendants[2]. Therefore, all of these defendants' motions will be discussed together.

Defendant ZPR alleges that the Lehigh Valley Center is located in a building which was originally owned by Defendants Steckel, Zegeye, Seleshi, Karoly and Angstadt and leased by them to Lehigh Valley. The MRI equipment is located in this building. ZPR is Lehigh Valley's general partner and was owned by Defendants Steckel, Zegeye and

---

**2.** Specifically, Defendant Steckel argues that (a) plaintiffs must wait until October 31, 1996 and attempt to exercise their option to purchase the MRI equipment before they can sue, (b) that the lease-purchase provision was a drafting error, and (c) this court should abstain in deference to the pending state court proceeding.

Karoly in equal shares when it was created. Lehigh Valley's limited partners were Defendants Karoly, Zegeye, and Steckel, the plaintiffs in this action, and about seventeen other individuals.

According to defendants, after several meetings, it was allegedly agreed that Lehigh Valley would lease the MRI equipment, which was owned by Defendants Karoly, Angstadt, Zegeye, Seleshi and Steckel. There would be no option to purchase the equipment since the limited partnership was allegedly only supposed to be a five year investment vehicle. In addition, the same arrangement was to exist with the Camp Hill and Wyoming Imaging Centers with the exceptions that the only limited partners of those Centers were Zegeye and Karoly, and that the general partner was ZP Investment, which was owned by Defendants Karoly and Zegeye. A drafting error resulted in the improper inclusion of an option to purchase. The amendment to the partnership agreement was to correct this mistake.

Defendants first argue that the option to purchase the MRI machine is not to be exercised under the lease until October 31, 1996 and therefore plaintiffs do not have a cognizable injury at this point. Yet defendants ignore the fact that plaintiffs are alleging that defendants attempted to defraud plaintiffs by forcing them to sign an amendment which would prevent them from exercising their option to purchase, and by signing a lease provision that caused Lehigh Valley to pay $6,000 a month more in leasing fees for the MRI equipment. It is immaterial whether the date has arrived when plaintiffs can exercise their option under the lease-purchase agreement; plaintiffs are suing defendants for their past acts of alleged fraud and conspiracy to defraud.

Defendants' second argument is that this court should abstain from deciding the claims in this case since the state court proceedings will determine the rights of the parties. If the state court determines that there was a drafting error and plaintiffs do not have a right to the MRI equipment at all, defendants claim that such a finding would preclude them from being held liable for defrauding plaintiffs, since, they cannot defraud

plaintiffs out of something that plaintiffs do not own. Finally, defendants argue that plaintiffs have not alleged sufficient facts which would constitute RICO violations. These last two arguments are discussed below.

### a. *Abstention argument*

It is doubtful that the state court proceeding duplicates the litigation in this suit. In the state court proceeding, the plaintiff is ZPR Investments Inc. The defendants are the limited partners who are plaintiffs in this action. The other defendants in this action are not parties in the state court proceeding. Therefore there are issues in this proceeding that could not be resolved in the state court suit. *See e.g. Trent v. Dial Medical of Florida*, 33 F.3d 217, 223–224 (3d Cir.1994).

Furthermore, the Supreme Court has stated that federal courts should abstain only if there are exceptional circumstances. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–819, 96 S.Ct. 1236, 1246–1247, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936–937, 74 L.Ed.2d 765 (1983). *See also Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 630 (3d Cir.1991). The federal court must consider: (a) the problems that occur when both federal and state courts assume jurisdiction over the same res, (b) the relative inconvenience of the federal forum, (c) the need to avoid piecemeal litigation, and (d) the order in which the state and federal proceedings were filed. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–1247; *Trent*, 33 F.3d at 225. Further, when a federal question is involved, it weighs heavily against abstention. *Moses Cone*, 460 U.S. at 23, 103 S.Ct. at 941. Finally, simultaneous litigation over similar issues with the same parties, but in different courts, is not unusual. The first one to come to judgment may create a res judicata or collateral estoppel effect as to the other. *See e.g. University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 275 (3d Cir.1991).

In this case, there is no res over which the court needs to assume jurisdiction; plaintiffs have asked for monetary damages.

The convenience of federal court litigation is not an issue since the parties are all located within this vicinity, approximately an hour's drive from the courthouse, and the attorneys are a few blocks away. A refusal to assert jurisdiction in this case would not prevent piecemeal litigation; plaintiffs would be forced to sue again since there are defendants in this case who are not parties in the state court action. Furthermore, the fact that the state court action was filed first is not dispositive since the Court in *Moses Cone* has stated that this factor is not to be applied mechanically; rather the court must consider how far the other proceeding has progressed. The parties in this case have not indicated that significant progress has been made in the case filed in Northampton County. *Moses Cone*, 460 U.S. at 21–22, 103 S.Ct. at 940. Finally, plaintiffs are bringing a federal question claim, thus weighing heavily against abstention. We therefore find that there is no need to abstain from deciding this case.

### b. *RICO claims*

Under RICO, it is unlawful for a person, through a "pattern of racketeering activity ... to acquire or maintain, ... any interest in or control of an enterprise which is engaged in ... activities [affecting] interstate or foreign commerce." 18 U.S.C. § 1962(b). It is also unlawful for a person employed by or associated with such an enterprise, to conduct or participate in such an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Finally, it is unlawful to conspire to violate the provisions of sections 1962(b) and (c). 18 U.S.C. § 1962(d).

Racketeering activity is defined through participation in any of an enumerated list of federal and state crimes, including extortion and mail fraud. 18 U.S.C. § 1961(1). Not all crimes are in this enumerated list, but those that are on the list are sometimes referred to as predicate acts.

In Count I of the complaint, plaintiffs charge that all defendants engaged in a pattern of racketeering activity to defraud plaintiffs of the MRI equipment in violation of sections 1962(b) and (c) of RICO, and that all defendants committed the predicate acts of

mail fraud under 18 U.S.C. § 1341. Plaintiffs also allege that Defendants Zegeye and ZPR committed the predicate act of extortion under 18 U.S.C. § 1951, by threatening to initiate a lawsuit and withhold distributions if plaintiffs did not sign the partnership amendment. Defendants argue that threatening to initiate a lawsuit is not extortion, and therefore plaintiffs have failed to allege a predicate act as to Defendants Zegeye and ZPR.

It is not clear that defendants' acts would constitute extortion. *See Peterson v. Philadelphia Stock Exchange,* 717 F.Supp. 332, 336 (E.D.Pa.1989) (threatening a lawsuit is not per se act of extortion). Nevertheless, we note that plaintiffs have alleged the predicate act of mail fraud on the part of all defendants, including Defendant Zegeye and ZPR. It is therefore unnecessary to determine whether Defendants Zegeye and ZPR have committed extortion in order to fulfill the predicate act requirement for RICO liability as to the first count; their allegation of mail fraud will suffice as a predicate act. Therefore the first count of plaintiffs' complaint withstands defendants' motion to dismiss.

In the second and third counts of plaintiffs' complaint, plaintiffs allege that defendants misappropriated partnership funds. Plaintiffs do not allege a predicate act in these two counts. Defendants argue that this failure should result in a dismissal of plaintiff's RICO claims in counts two and three. Plaintiffs argue that predicate acts do not need to be asserted for these two counts because these counts fulfill the "pattern of racketeering activity" requirement.

The Supreme Court has held that a pattern of racketeering activity can be proven if the racketeering *predicates* are (a) related and (b) there is a threat that the activity will continue. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–2901, 106 L.Ed.2d 195 (1989). Acts are related if they have "similar purposes, results, participants, victims" and can be shown not to be isolated events. *Id.* at 243, 109 S.Ct. at 2902–2903. The Third Circuit has held, following the Supreme Court's ruling, that the relatedness requirement is not to be interpreted too narrowly. *Tabas v. Tabas,* 47

F.3d 1280 (3d Cir.1995). In *Tabas*, the defendants were accused of committing mail fraud and using the mails to misappropriate funds from the plaintiff, in violation of RICO. The parties in *Tabas* did not dispute that the relatedness requirement was met. As for the continuity requirement, the court held that it was continuous because it had occurred over three and a half years and because the activities continued even after plaintiff's complaint was filed. *Id.* at 1292–1296.

In this case, plaintiffs have alleged that defendants' conduct has taken place over the past four years. Furthermore, misappropriation of funds could pose a threat of continuing and plaintiffs have alleged as such. Nevertheless, we find that even if plaintiffs have proven that there has been a pattern of activity including the misappropriation of funds, they have not alleged that the mail fraud and extortion predicates were done in connection with the misappropriation of funds. In other words, plaintiffs have not alleged a predicate act for their misappropriation allegations, although they have alleged instances of mail fraud that were allegedly part of defendants' scheme to defraud them of the MRI equipment. In fact, plaintiffs have not even alleged any sections of RICO that have been violated by defendants' misappropriation of funds, even though they have entitled these counts "RICO Violations." Furthermore, all of the case law cited by plaintiff and found by this court concerns whether predicate acts can be said to be related *to each other*, thereby amounting to a "pattern of racketeering activity," or whether the predicates are isolated incidents. The acts of mail fraud involved in sending lease expense statements to plaintiffs such that they would be defrauded of the MRI equipment are clearly related; but that does

not mean that the predicate acts of mail fraud committed to defraud plaintiffs of the MRI equipment are in any way related to the misappropriation of funds by Defendants Zegeye and Karoly. Therefore, we hold that while the mail fraud predicates are related to each other and in furtherance of a scheme to defraud plaintiffs of the MRI equipment, they are not related to the misappropriation of partnership funds such that the misappropriation of funds claim does not need to fulfill the predicate act requirement. Counts two and three of plaintiffs' complaint are therefore dismissed.

Nevertheless, since we are at an early stage in the litigation, and leave to amend is often granted freely, we will afford plaintiffs an opportunity to amend these two counts of their complaint if they chose to. do so. *See e.g. Cemar Inc. v. Nissan Motor Corp.*, 897 F.2d 120, 122 (3d Cir.1990); *Moffatt Enterprises Inc. v. Borden, Inc.*, 807 F.2d 1169, 1177 (3d Cir.1986).

### C. Defendants Karoly and Angstadt's Motions to Dismiss

Although defendants Karoly and Angstadt make arguments that Count two should be dismissed, we will not address these arguments since this count has already been dismissed in accordance with the discussion above [3].

Defendants argue that count one should be dismissed because plaintiffs have not proven that defendants are part of an enterprise, or that defendants participated in a "pattern of racketeering activity" within the meaning of the RICO statute. Defendants argue that count one of the complaint relates to the misappropriation by defendants of the MRI machine when it was acquired, and the lease payments that the partnership made. This

---

**3.** Defendants Karoly and Angstadt also argue that counts one and four should be dismissed because plaintiffs must wait until October 31, 1996 to assert a claim, and plaintiffs must show that they own the MRI equipment before they can assert a claim that defendants attempted to defraud them of their right to it.

The argument that plaintiffs must wait until October 31, 1996 was addressed above. Furthermore, in discussing the abstention argument, we noted that the ownership of the MRI machine

may be resolved in the state court action or this action, and whichever was resolved first would be collateral estoppel as to the other. Moreover, plaintiffs are arguing that they were injured because defendants attempted to defraud the partnership of the option to purchase the MRI equipment—by using partnership funds to purchase the MRI machine in their own names and then leasing the equipment to the partnership. These arguments do not require plaintiffs to show that they own the machine themselves.

activity, defendants allege, occurred between September and October 1991 when the defendant obtained financing for the machine and executed the lease agreement. Defendants also argue that plaintiffs have not shown that the lease expense mailings caused plaintiffs to believe that they would own the MRI equipment. Furthermore, defendants argue that the alleged incidents occurred between July and October 1991, too short a time period to meet RICO's continuity requirement and hence show a pattern of racketeering activity. Defendants also argue that plaintiffs have not alleged with detail when Defendant Zegeye allegedly acted on behalf of Defendant Karoly. Finally, defendants claim that they were in litigation against Defendant Zegeye from April 26, 1994 and thus could not be in conspiracy with him to misappropriate funds from December 1993 to June 1995.

■ We find that plaintiffs have alleged sufficient facts to hold that defendants are part of an enterprise and have engaged in a pattern of racketeering activity. As we stated in our discussion above, the mail fraud predicates are related and they meet the continuity requirement since the plaintiffs allege conduct that occurred from 1991 to 1995, approximately four years. *Tabas,* 47 F.3d at 1294 (3d Cir.1995) (holding that three and a half years was enough to meet continuity requirement). Furthermore, plaintiffs do not need to prove at the pleading stage that they relied on defendant's mailings; plaintiffs allegations will only be dismissed if there is no set of circumstances under which the facts as they have alleged would present a claim for relief. In fact, contrary to defendants' assertions, the mailings themselves do not have to affirmatively contain misrepresentations. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1413 (3d Cir.1991). It is enough if the mailings helped in accomplishing defendant's scheme to defraud.

Defendants also argue that count five should be dismissed because plaintiffs have not pleaded their fraud and conspiracy claims

with particularity under Fed.R.Civ.P. 9(b)[4]. Defendants Karoly and Angstadt assert that particularity is especially necessary here because they were in conflict with Defendant Zegeye, at the times relevant to this lawsuit, and therefore could not have been in conspiracy with him.

■ The Third Circuit has held that the particularity requirement under Rule 9(b) for alleging fraud in a RICO claim is not to be construed too narrowly. *Saporito v. Combustion Engineering Inc.,* 843 F.2d 666, 675 (3d Cir.1988). In *Saporito* plaintiffs had not alleged who made the fraudulent representations and who received the information. *Id.* Neither of those defects are present here. Plaintiffs have alleged the particular names of the defendants they claim made fraudulent statements, and the approximate times of the misrepresentations. Furthermore, plaintiffs have alleged the documents that they claim induced their reliance, for example, the offering memorandum and the lease payment and expense mailings. Plaintiffs need not allege a laundry list of dates, times and persons involved in the alleged fraudulent conduct. *Elysian Fed. Sav. v. First Interregional Equity,* 713 F.Supp. 737, 756 (D.N.J.1989).

■ As for defendants' claim that plaintiffs must allege conspiracy with particularity, we find that plaintiffs have pleaded their conspiracy claim with sufficient particularity. Plaintiffs are required to give defendants some detail about the conspiracy alleged, for example, the time period in which the actions allegedly took place, the object of the conspiracy, the actions taken in furtherance of the scheme, facts evidencing an agreement among the conspirators, and facts showing that defendants knew their actions constituted racketeering. *Shearin v. E.F. Hutton Group Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989); *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989); *Loftus v. SEPTA,* 843 F.Supp. 981, 986 (E.D.Pa.1994).

---

**4.** Notwithstanding defense counsel's assertions to the contrary, Fed.R.Civ.P. 9(b) does not require that allegations of conspiracy be alleged with particularity; only allegations of fraud have this requirement under the rule. Nevertheless, there is Third Circuit case law that deals with the pleading requirements for allegations of conspiracy; we discuss those requirements further on in this memorandum.

In this case, plaintiffs have alleged that the conspiracy took place between 1991 and 1995. In some cases plaintiffs have even given the specific month and year of the alleged actions. Furthermore, plaintiffs have alleged that the object of the conspiracy was to defraud them of assets, specifically the MRI equipment and partnership funds. Plaintiffs have also alleged that defendants took various actions in furtherance of their scheme, including sending them statements to lull them into believing that the equipment was being rented by the partnership under the lease-purchase provision, and misappropriating partnership funds. Plaintiffs have even alleged that Defendant Zegeye misappropriated funds on behalf of Defendant Karoly; thus implying that there was agreement among the parties and knowledge that their conduct was wrong. *Bartle*, 871 F.2d at 367.

Defendants next argue that Count Seven should be dismissed because plaintiffs have not alleged facts which could show willful, malicious, intentional or outrageous conduct, and that count eight should be dismissed because the defendants do not have control over the management of the partnership and so cannot make an accounting.

Allegations of willful, malicious, intentional or outrageous conduct are for the jury to decide. *See generally, Gares v. Willingboro Township*, 90 F.3d 720, 732–733 (3d Cir.1996); *Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 679 (E.D.Pa.1991). Since this is a motion to dismiss, and we are constrained to view the pleadings in the light most favorable to plaintiff, we will not dismiss this count of the complaint at such an early stage. Plaintiffs have alleged enough facts that could be viewed by a jury to constitute such conduct.

With regard to their claim that they are not subject to an action for an accounting, defendants have failed to cite any law in support of their argument. Nevertheless, we note that Pennsylvania has codified the Revised Uniform Limited Partnership Act ("RULPA"). Section 8562 of RULPA provides that a partnership interest may be assigned in whole or in part and such an assignment does not dissolve the limited partnership. 15 Pa.Cons.Stat.Ann § 8562(a).

This section further provides that a partner ceases to be a partner and to have any rights or powers of a partner once his partnership interest has been assigned. *Id.* The Lehigh Valley partnership agreement also permits the assignment of limited partners as long as certain formalities are followed, including the giving of notice to the general partner.

Since Defendants Karoly and Angstadt have assigned their interest to Defendant Zegeye, according to section 8562(a) they no longer have the powers of a partner, including the ability to be subject to an accounting. This count is therefore dismissed at to these two defendants.

## CONCLUSION

In light of the discussion above, the defendants' motions to dismiss plaintiffs' complaint is denied in part and granted in part. The second and third counts of the complaint are dismissed. The eighth count of the complaint is dismissed as to Defendants Karoly and Angstadt. An appropriate Order follows.

## *ORDER*

AND NOW, this 23rd day of October, 1996, upon consideration of the Motions of Defendants to Dismiss the Complaint for Failure to State a Claim upon which Relief may be Granted, and responses thereto, the Motions are resolved as follows:

(a) The second and third counts of the complaint are dismissed. Plaintiff has thirty days to amend them to allege violations of the Racketeer Influenced and Corrupt Organizations Act.

(b) The eighth count of the complaint is dismissed as to Defendants Karoly and Angstadt.