**Mark WALDORF, Plaintiff,**

v.

**BOROUGH OF KENILWORTH, et al., Defendants.**

**Civil No. 84–3885 (WHW).**

United States District Court, D. New Jersey.

March 24, 1997.

Michael J. Barrett, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for Plaintiff.

Elizabeth A. Wilson, Amdur, Boyle & Maggs, P.C., Oakhurst, NJ, for Defendant Borough of Kenilworth.

## OPINION

WALLS, District Judge.

Before the Court is the renewed motion of plaintiff Mark Waldorf ("Waldorf") for certification of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Defendant Borough of Kenilworth ("the Borough") opposes certification. The Court decides this motion on the basis of the written submissions of the parties pursuant to Rule 78.[1]

### Factual Background

Although the background of this unfortunate case is familiar to all involved, the Court will briefly recount the facts relevant to this motion.

On November 17, 1982, Waldorf was a passenger in a van which collided with an automobile in an intersection, controlled by a malfunctioning traffic light, in the Borough of Kenilworth. The accident left him a quadriplegic.

Waldorf brought suit against the Borough, the drivers and occupants of the vehicles, members of the Borough's police department who allegedly had received notice of the malfunctioning traffic light before the accident and had failed to take preventive action. and various elected officials of the Borough.[2] In its Amended Answer to the Complaint, the Borough pleaded the affirmative defense of comparative negligence.

### Procedural History

In 1988, the case was tried to determine liability and damages. The jury awarded Waldorf $8,400,000. The Court of Appeals for the Third Circuit affirmed in part, reversed in part and remanded for a new trial.

On July 28, 1992, before the second trial, a pretrial hearing was held before the magistrate judge. At this proceeding, counsel for the Borough argued, over Waldorf's objections, that it should be permitted to stipulate liability in the second trial on the condition that the case be bifurcated with different juries hearing liability and damages and that the damages trial proceed before a liability trial. Counsel stated:

> The borough has, after much consideration and soul searching, authorized me to advise the Court that they will not contest liability in this matter, provided two things, and these are absolute conditions for this admission by them: one is that the case be bifurcated and different juries hear liability and damages; and the second thing is that the damage trial proceed first before a liability trial. Therefore, a decision not to contest liability is predicated on those two prerequisites.

Transcript of the Proceedings of July 28, 1992 at 3:2–10. On August 4, 1992, the magistrate judge incorporated this precise statement in a Case Management Order, thus memorializing the agreement.

In September 1992, the damages phase of the second trial proceeded. This time, the jury returned a verdict in the amount of $16,135,716. The Third Circuit vacated the verdict and remanded for a new trial.

After the second trial, the Borough's new counsel moved to withdraw its stipulation of liability. In a published opinion, the Court ruled that the stipulation was binding and denied the application. *Waldorf v. Borough of Kenilworth*, 878 F.Supp. 686 (D.N.J.1995). In October 1995, the case was retried and the jury awarded Waldorf $3,086,500.[3]

In September 1996, Waldorf moved for certification of the judgment as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The Court granted his motion in an Order dated October 10, 1996 but did not make its reasons for doing so explicit for the record. The appeal was dismissed by

---

1. In doing so, the Court considers the papers submitted with regard to the present motion in addition to those submitted with regard to the first motion in September 1996.

2. Waldorf's claims against Borough officials, one police officer, and the drivers of both vehicles are still pending.

3. In an Order dated October 10, 1996, the Court reduced the amount of the verdict by $80,559, pursuant to the collateral source set-off rule codified at N.J.S.A. 59:9–2(e) (West 1992). This amount represents the amount of social security disability benefits received by Waldorf from the date of the accident to the date of the Order.

the Court of Appeals for the Third Circuit on December 5, 1996 "for lack of appellate jurisdiction."

The Court has instructed the parties to brief the issue again so that it could make specific findings for the benefit of appellate review as to why certification was warranted. The renewed motion is now before the Court.

### Legal Discussion

I. *Whether The Renewed Motion Is Appropriate In View of the Court of Appeals' Dismissal of the Appeal.*

■ In certifying a judgment as final pursuant to Rule 54(b), a district court must state on the record the analysis by which it determined that there was no just reason for delay, to assist a reviewing court in the event that the certification is challenged on appeal. *Allis–Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir.1975); *see also Cemar, Inc. v. Nissan Motor Corp., U.S.A.*, 897 F.2d 120, 122–23 (3d Cir.1990) (dismissing appeal for lack of jurisdiction because district court did not state its reasons for certification on the record).

The Third Circuit dismissed Waldorf's appeal "for lack of appellate jurisdiction," citing Rule 54(b) of the Federal Rules of Civil Procedure. No further explication was provided. The defendant argues that relitigating the certification is inappropriate in light of the Third Circuit's dismissal. It submits that all relevant issues were before the court of appeals, and an assumption that the merits were not considered at that time is therefore improper. Waldorf reads the dismissal as a statement that the prerequisites for certification had not been met—that this Court failed to make specific findings, on the record, supporting certification.

The Court hesitates to divine the intent of the Third Circuit's concise statement. However, it is probably likely that this Court's failure to make its reasons for certification explicit for the record was the reason for the dismissal for lack of appellate jurisdiction. *See, e.g., Cemar*, 897 F.2d at 122–23 (ruling that court lacked appellate jurisdiction because of unsupported Rule 54(b) order): *Allis–Chalmers*, 521 F.2d at 364 (articulating

rule requiring reasoned statement in support of Rule 54(b) certification). Furthermore, paramount to the certification analysis is the presence of an affirmative defense. The presence or absence of an affirmative defense is in dispute by the parties. The Court has not made a determination on the issue but will do so now.

Therefore, the Court addresses the certification issue anew in view of its resolution of the affirmative defense issue. It sets out its findings with regard to certification, should the appellate court wish to revisit the issue.

II. *Whether Certification Is Proper Under Rule 54(b).*

■ Rule 54(b) permits, in relevant part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b).

■ The Supreme Court has elucidated the standard to be followed in deciding motions under this rule:

A district court must first determine that it is dealing with a "final judgment" ... a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and ... "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." [*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956).] ... Once having found finality, the district court must ... determine whether there is any just reason for delay ... tak[ing] into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." *Id.* at 438, 76 S.Ct. at 901.

*Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7–8, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). The burden is on the party moving for certification to demonstrate that the case warrants it. *Allis–Chalmers Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360, 365 (3d Cir.1975). Rule 54(b) orders are not be entered into "routinely or as a courtesy or accommodation to counsel." *Panichella v. Pennsylvania R.R. Co.,* 252 F.2d 452, 455 (3d Cir.1958). Certification under Rule 54 is appropriate only in the "infrequent harsh case as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in light of the public policy indicated by the statute and rule." *Id.* (citation omitted).

The Court must first consider whether the damages judgment against the Borough is a "final judgment" within the meaning of Rule 54(b). The jury verdict is in fact a "decision upon a cognizable claim for relief." The jury concluded that Waldorf was entitled to $3,086,500 from the defendant Borough, which conceded its liability for the purposes of the damages trial. This was a decision on Waldorf's claim for relief and therefore a judgment. The judgment is also a final one, for it is an "ultimate disposition" of Waldorf's individual claim for damages against Borough. Defendant argues that the alleged existence of its affirmative defense against Waldorf militates against a finding of a final judgment. However. the presence of such a defense is a factor to be considered in the delay analysis. It does not preclude a finding that the judgment against the Borough, following a full trial on the issue of damages, is a final one.

■ A finding of finality is not dispositive, for the Court must also determine that there is "no just reason for delay." Fed.R.Civ.P. 54(b). Factors to be considered by a district court in making such a determination include (1) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final: (2) the relationship between the adjudicated and unadjudicated claims; (3) the possibility that the need for review might or might not be mooted by future developments in the district court: (4) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Allis–Chalmers,* 521 F.2d at 364 (footnotes omitted). The district court must balance the competing factors present in the case to determine if it is in the interest of sound judicial administration and public policy to certify the judgment as final. *Id.*

### A. Presence or absence of a affirmative defense.

The Third Circuit has stated, "[I]n the absence of unusual or harsh circumstances, we believe that the presence of a counterclaim, which could result in a set-off against any amounts due and owing to the plaintiff, weighs heavily against the grant of 54(b) certification." *Allis–Chalmers,* 521 F.2d at 366. By unusual or harsh circumstances the Third Circuit indicated that it referred to any considerations raised by analysis of the other factors. *Id.* at fn. 14. In analyzing the effect of a counterclaim, the *Allis–Chalmers* court was concerned about the possibility that "a defendant will have to pay over monies to a plaintiff only to be reimbursed if defendant prevails on its yet unadjudicated counterclaims." *Id.* at 366.

■ The Borough states that it intends to proceed at the liability trial against Waldorf with the affirmative defense of comparative negligence, which it pleaded in its Amended Answer to the Complaint and which it argues that it did not waive in its stipulation of liability. It contends that such a defense could result in a set-off against the judgment sought to be made final, and thus precludes certification. Because this affirmative defense, if successful, would have the same effect as a successful counterclaim—a set-off against the damages judgment—the Court considers the presence or absence of such a defense in the certification analysis.

In a hearing before the magistrate judge, before the second trial, the Borough stipulated liability in exchange for a bifurcated trial with the damages phase to proceed first. Counsel made no further explanation of the

scope of the stipulation and expressed no intent to preserve any affirmative defenses. His statements at the hearing regarding the stipulation were incorporated by reference into the magistrate judge's Case Management Order.

Despite this, the Borough contends that its affirmative defense of comparative negligence was not waived by its stipulation. In support, it relies upon the opening statement of its counsel in the second trial: "The Borough, in fact, has said it is at least *in part* responsible for this tragic event." Def. Memorandum in Support of Cross Motion at 5 (emphasis added). The Borough explains that counsel's statement demonstrates some still-pending affirmative defense against Waldorf. To advance its defense, it intends to introduce an expert report opining that Waldorf was partially responsible for his injuries because his seat in the vehicle was not secured to the floor.

■ The Court finds that the Borough has effectively waived its affirmative defense through its stipulation of liability. As this Court has already noted, "a stipulation is an admission which cannot be disregarded or set aside at will." *Waldorf v. Borough of Kenilworth,* 878 F.Supp. 686, 691 (D.N.J.1995) (citations omitted).

The Borough grasps at its counsel's remark during his opening statement that the Borough was liable "in part" to show that it intended to proceed against Waldorf during a liability trial. It argues that its counsel's unequivocal statement before the magistrate judge in which the Borough agreed to stipulate liability in exchange for a bifurcated trial was not a waiver of its affirmative defense.

The Court has several answers. First, the opening statement at the second trial is lot dispositive or even indicative of intent to preserve a claim against Waldorf. Rather, it is consistent with the understanding that the liability phase of the trial was to treat the cross-claims asserted by the Borough against the other defendants. Second, following the second trial, counsel for the Borough moved for and was granted Rule 54(b) certification on damages. No mention of an affirmative defense was made at that time. If the Borough indeed intended to pursue a set-off for

comparative negligence against Waldorf during the liability phase, why would it have moved for certification of the judgment as final?

Third, and perhaps most important, is a finding that was determinative in this Court's opinion in *Waldorf.* The Borough made a "carefully considered, calculated" tactical decision to stipulate liability in this matter. *Id.* at 692. It made the judgment that the "amount of damages awarded to Waldorf, if any, would be of a lesser quantum if the jury awarding the damages was not aware of the borough's actions leading to its liability." *Id.* Moreover,

> At the pretrial hearing, the Borough's attorney stated that he was entering the stipulation only based upon the occurrence of two absolute conditions: (1) that the trial would be bifurcated as to liability and damages with separate juries deciding each; and (2) that the damages phase would be tried before the liability phase.... [T]he Borough expressed no ... intent that the stipulation be used solely to narrow the factual issues disputed by the parties[.]

*Id.*

If the Borough wished to preserve for itself some kind of opportunity to establish the comparative negligence of Waldorf it was incumbent upon it to indicate that for the record It did not do so. Instead, it made a statement of liability for which it received the considerable concession of a bifurcated trial and the benefit of not having a damages jury hear the facts underlying its liability to Waldorf. Having secured that tactical benefit, the Borough now seeks to reopen and litigate the issue of Waldorf's liability. The Borough cannot return to court, five years after its stipulation and after a damages trial has been concluded, and create after-the-fact explanations—without any support in the record—that its simple stipulation of liability really meant something else.

■ Lastly, such a result would run afoul of the principles underlying New Jersey's "ultimate outcome" rule. *See Roman v. Mitchell,* 82 N.J. 336, 345, 413 A.2d 322 (1980). In *Roman,* the New Jersey Supreme

Court held that "a jury in a comparative negligence situation should be given an ultimate outcome charge so that its deliberations on percentages of negligence will not be had in a vacuum, or possibly based on a mistaken notion of how the [comparative negligence] statute works." *Id.* The reasoning is that "a jury informed of the legal effect of its findings as to percentages of negligence in a comparative negligence trial is better able to fulfill its fact finding function." *Id.* at 346, 413 A.2d 322: *see also Weiss v. Goldfarb*, 295 N.J.Super. 212, 229, 684 A.2d 994 (App.Div. 1996) (holding that jury entitled to know that defendant hospital was by statute only liable to the extent of $10,000). Thus, in order to have a better sense of the impact of its decision, a "jury is entitled to know that any award granted a plaintiff will be reduced by an amount equal to the percentage of his own negligence." *Dimogerondakis v. Dimogerondakis*, 197 N.J.Super. 518, 522–23, 485 A.2d 338 (Law Div.1984).

Here, if the Borough has its way, one jury will have decided the amount of Waldorf's total damages and a second jury may quantify, by percentage, his fault. The first jury will have operated in the kind of vacuum criticized by *Roman*. In awarding Waldorf some $3 million in damages, that jury had no idea that the award could be offset in the future by a finding of comparative negligence on the plaintiffs part. New Jersey decisional law does not contemplate such a result, a result which would be perniciously unfair and unjust.

Therefore, the Court holds that the stipulation of liability not only bound the Borough through any future trials but also bound it with respect to any affirmative defenses it may have had against Waldorf. Because the Borough waived in its stipulation of liability any opportunity to establish the comparative negligence of the plaintiff, this factor supports certification of the judgment as final.

B. *Relationship between adjudicated and unadjudicated claims.*

The unadjudicated claims all address the issue of liability. Because the Borough has conceded liability, the only basic issue remaining is whether to allocate Waldorf's judgment among the other defendants in the case.

The Borough has cross-claims pending against several of the defendants and seeks contribution from them in relation to the damage award against it. However, as plaintiff points out certification of a final judgment as to the claim against the Borough does not impair the Borough's ability in any way to proceed against the other defendants. Nor does the Borough argue that it does. Therefore, the first *Allis–Chalmers* factor does not weigh against certification.

C. *Possibility that the need for review might or might not be mooted by future developments.*

Plaintiff has made it clear that he seeks certification of the judgment in order to proceed with his appeal in the court of appeals. It is highly unlikely that the litigation of the Borough's cross-claims on the basis of liability will serve to moot the issue of the propriety of the jury verdict. Accordingly, this factor favors certification.

D. *Possibility that the reviewing court might be obliged to consider the same issue a second time.*

In *Panichella v. Pennsylvania Railroad Co.*, the Third Circuit considered this factor in a case involving a railroad employee's sidewalk accident. He had sued the railroad and the railroad had filed a third party claim against the owner of the property abutting the sidewalk. Both the railroad and the property owner moved for summary judgment against the plaintiff on the basis of a release signed by the plaintiff. At issue was whether the release applied only to the third party defendant or to both defendants. The district court granted summary judgment against the third party defendant property owner but not against the railroad defendant, and certified the judgment pursuant to Rule 54(b). *Panichella*, 252 F.2d at 453–54.

The Third Circuit reversed and found the certification an improper exercise of the district court's discretion. Specifically, it noted that the plaintiff was not a party to the appeal and that no ruling it would make with

regard to the meaning or effect of the disputed release could become *res judicata* between the principal parties. *Id.* at 455.

However, unlike *Panichella*, the issue of the propriety of the amount of damages will not be revisited by any other party, thereby requiring a second appellate determination. Neither of the principal parties—Waldorf and the Borough—will be absent from the appeal. Thus, the third *Allis–Chalmers* factor does not weigh against certification.

E. *Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, and expense.*

Waldorf urges that the factor of delay weighs heavily in favor of certification because of the length of this litigation—fifteen years—and the ensuing three jury trials and two appeals. To date, despite the severity of his injuries, he has received no compensation from the defendant. The Borough responds that any delay is likely to be minor because a liability trial can be accomplished in the near future.

The long delay in resolution of this matter favors Waldorf's position. Although the Borough argues that a liability trial would not take very long, the protracted history of this case indicates otherwise. By the time the liability trial finally gets underway, and considering the inevitable appeals which will follow, relief for the plaintiff will be very long in coming.

The Court further finds that economic and solvency considerations do not weigh against certification. In *Allis–Chalmers,* the court noted that an examination of this factor should ideally take into consideration the financial condition of the parties, particularly whether the liable party's "financial condition [is] such that [the plaintiff] might in any way be prejudiced by postponing execution on its judgment." *Allis–Chalmers,* 521 F.2d at 364. Relevant to its analysis was the presence of a counterclaim by the defendant against the plaintiff which remained to be adjudicated. *Id.* The financial condition of the parties was important in determining the defendant's ability to satisfy the judgment or the plaintiff's ability to satisfy a potential judgment on the unlitigated counterclaim.

Here, no affirmative defense exists and no set-off for comparative negligence will be available. Therefore, Waldorf's financial condition is not at issue. Moreover, the amount of the judgment against the Borough is definite and fixed. With that knowledge, the Borough can undertake the requisite actions as a public entity to meet its obligation to Waldorf under the verdict.

Although there is no evidence that the Borough will be incapable of satisfying the judgment at a later date, postponing execution on the judgment is highly prejudicial to Waldorf. As Waldorf rightly points out, the Borough has for fifteen years enjoyed the benefit of retaining the use of its money during this arduous litigation with no liability to pay prejudgment interest. During this time, he has suffered from catastrophic injuries and has received no compensation from the Borough, the admittedly responsible party. This weighs strongly in favor of Waldorf.

In conclusion, all of the *Allis–Chalmers* factors support the plaintiff's motion for certification. The Court finds that it is in the interests of "sound judicial administration and public policy" as well as in the interests of justice to certify the judgment as final. *Id.* at 360. If the jury verdict is affirmed by the Third Circuit, the Court can then schedule the liability phase of the trial and hopefully bring the matter to some resolution.

### Conclusion

The Court holds that the Borough has failed to preserve its affirmative defenses against Waldorf. It finds that there is "no just reason for delay," Fed.R.Civ.P. 54(b), and grants the plaintiff's motion for certification of the judgment as final.

**SO ORDERED.**